Statement.

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## SOUTHERN RAILWAY CO. V. CHILDREY.

### March 14, 1912.

### Absent, Cardwell, J.

1. STARE DECISIS—*Questions Not Decided.*—A question of law not brought to the attention of the court, nor passed upon by it, cannot be considered as decided in a subsequent case involving the same question.

2. MASTER AND SERVANT—*Safe Appliances—Care to Provide—Usage of Business.*—The master does not owe his servant the duty of furnishing him with absolutely safe tools and appliances for his use.    The measure of the master's duty is to use ordinary care to provide *reasonably safe* tools and appliances, and this degree of care on his part is ascertained by the general usages of the business.    *Norfolk & W. R. Co.* v. *Ampey,* 93 Va. 108, criticised, and in part overruled.

3. MASTER AND SERVANT—*Railroads—Brakeman—Defective Brakes—Open Defects—Inspection.*—It is the duty of a brakeman on a railroad train, so far as consistent with his other duties, the attending circumstances, and the opportunities afforded, to look out for open and obvious defects in the brakes on the train on which he is employed, and he is not relieved of that duty by reason of the fact that the railroad company employs a separate force of men especially to inspect trains and cars, and see that they are in proper and reasonable condition for service.

4. MASTER AND SERVANT—*Railroads—Defective Brakes—Knowledge of Fellow Brakeman.*—The knowledge of a defect in machinery of a fellow brakeman on the same train with a brakeman injured by such machinery is not knowledge of the company employing them.  The knowledge which will charge the company must be that of some officer or agent for whose negligence the company would be responsible.

Error to a judgment of the Hustings Court, Part II., of the city of Richmond, in an action of trespass on the case.    Judgment for the plaintiff.    Defendant assigns error.

*Reversed.*

### INSTRUCTIONS GIVEN BY THE COURT.

"1. The court instructs the jury that it was the persona

duty of the defendant company to exercise ordinary care and diligence. to furnish to and provide for the plaintiff sound and safe brakes and appliances with which to operate and brake the car in question, and to this end it was equally the duty of the defendant to exercise ordinary care to inspect and examine the brakes and appliances from time to time to discover and repair defects in them, and that these duties could not be assigned or delegated by the defendant to any of its employees so as to relieve the defendant of liability; and if the jury believe from the evidence that the said brake was in a defective or unsafe condition, and that the defendant knew, or by the exercise of ordinary care could have known, that the said brake which it provided for the use of the plaintiff on the car in question was defective or unsafe, and that it did not exercise ordinary care to discover or repair the same, and the plaintiff was thereby injured, without negligence on his part, then the defendant is liable for such injury, and they will find for the plaintiff.

"2. The court instructs the jury that the law presumes that the plaintiff exercised due and proper care at the time he was injured, and the burden of proving his contributory negligence is upon the defendant, unless such contributory negligence appears from the plaintiff's evidence.

"3. The court instructs the jury that the plaintiff had the right to assume at the time he received the injuries in question that the defendant had furnished him with a reasonably safe brake for him to discharge his duties as brakeman for the defendant.

"4. The court instructs the jury that if they believe from the evidence that the brake was in an unsafe, dangerous, or defective condition, and that the defendant knew, or by the exercise of ordinary care could have known, of its unsafe, dangerous, or defective condition, in time to have notified or warned the plaintiff of said unsafe, dangerous, or defective condition, and to have prevented him from using said brake, and that the defendant failed to do so, and that the plaintiff, by reason of the unsafe, dangerous, or defective condition of said brake, was injured while in the exercise of ordinary care on his part, then they must find for the plaintiff.

"5. The court instructs the jury that a careful inspection

means such inspection as a man of ordinary care and caution would make, under the circumstances, to discover the alleged defect in the brake, and that ordinary care and caution means such care and caution as are reasonably porportioned to the dangers to be avoided.

"6. The court instructs the jury that under rule 661 of the Southern Railway Company, in evidence before them, it was the duty of the plaintiff, Childrey, to make such reasonable inspection for open and obvious defects in the brake on the train upon which he was working on the day of the accident as his other duties, the time afforded him, and the other circumstances under which he was placed afforded him for the purpose, would permit; and if the jury believe from the evidence that he failed or neglected to do so, and that the injury received by him was in consequence of such failure, then he cannot recover in this case, and they must find for the defendant.

"And if the jury shall further believe from the evidence that the defendant company maintained a force of men, separate from the brakeman in its employ, whose special duty it was to inspect cars and trains made up, and see that they were in proper and reasonably safe condition for service before submitted to the train-men (of whom the plaintiff was one) for use; and that, in accordance with such system, the car on which the plaintiff was injured underwent, or should have undergone, inspection by this force of men before the plaintiff was called upon or required to use it, then the jury are instructed that the defendant company, notwithstanding its said rule 661, assumed towards the plaintiff the duty of inspecting said car. That, accordingly, the plaintiff had the right to assume that this duty had been properly performed, when called upon to use the brake in question; and, if his injury resulted from the failure of the defendant company's inspectors to properly perform that duty, he is entitled to recover, unless the jury shall further believe that the plaintiff's own failure to inspect said brake amounted, under all the circumstances of the case, to want of ordinary care and caution for his own safety.

"7. The court instructs the jury that the burden is upon the plaintiff to prove that the injury which he sustained was occa-

sioned by some act of negligence on the part of the defendant company, as charged in the declaration, and that the evidence must show more than a mere probability of negligence. It is not sufficient that the evidence is consistent equally with the existence or non-existence of negligence. There must be affirmative and preponderating proof of the defendant's negligence; and if the jury believe from the evidence that it is just as probable that the plaintiff's injury was occasioned by some cause for which the defendant company was not responsible as from some cause for which it was responsible, then they must find for the defendant.

"8. The court instructs the jury that it is their duty to try this case without being influenced by sympathy from the mere fact that the plaintiff was injured and has suffered, as the jury, as much as the court, are under the solemn obligation of an oath to decide, according to the law and the facts; and without negligence by the defendant it cannot be held pecuniarily liable; and even if the jury believe from the evidence that the defendant has been negligent, if they further believe from the evidence that the plaintiff was also guilty of negligence, and that his negligence contributed to any extent to his injury, he cannot recover against the defendant.

"9. The court instructs the jury that the defendant company was not a guarantor of the safety of the plaintiff, but was required to exercise ordinary care to furnish and maintain such appliances as are reasonably safe and adequate for the work to be performed; that the plaintiff was required to use ordinary care to avoid injury, and that to entitle the plaintiff to recover in this case the burden of proof is on him to show, first, that the brake or appliances used in connection therewith were defective, and that such defect was the proximate cause of the injury; second, that the company knew, or ought to have known, they were defective, in the exercise of ordinary care; and, third, that the plaintiff could not have, in the exercise of ordinary care, avoided the accident which resulted in his injury.

"10. The court further instructs the jury that, in assessing the amount of damages, if any, to which the plaintiff is entitled, they may take into consideration the extent of the injuries, the amount of physical and mental pain and suffering and loss of

time, and the physical incapacity and the permanency or dura-
tion of the injury done to the plaintiff, and all facts and circum-
stances which tend to show the extent of the injury done and
damages sustained, if any, by the plaintiff, and award to him
such sum as they think sufficient to cover such damages and
injury, if any, not exceeding, in any case, the sum of $10,000,
the amount sued for."

Of the said instructions, numbers 1, 2, 3, 4, 5, and 10 were
instructions asked for by the plaintiff; numbers 7, 8, and 9
were asked for by the defendant; number 6 was an instruction
given by the court. The defendant, by counsel, having asked
the court to construe rule 661 of the defendant company, offered
instructions "B" and "D," which instructions the court refused,
and thereupon, in lieu thereof, gave said instruction No. 6.

INSTRUCTIONS ASKED FOR BY THE DEFENDANT, BUT REFUSED.

"(A) The court instructs the jury that it was the plaintiff's
duty to acquaint himself with the dangers incident to the work
about which he was employed, and the law presumes that the
plaintiff knew such dangers or perils as were open, obvious, and
usually attendant upon the service as brakeman in which he was
engaged; and if the jury believe from the evidence that the plain-
tiff knew or might have known of the dangers, and could have
avoided the injury to himself, by the exercise of ordinary care,
they must find for the defendant.

"(B) The court instructs the jury that where, by the terms
of the employment, a brakeman is charged with the duty of in-
specting the appliances which he is using, he cannot recover for
injury sustained because of defects in such machinery or appliances,
if he neglects his duty in that regard, and if the defects are such
as are discoverable by proper inspection.

"(C) The court instructs the jury that the knowledge of a
fellow brakeman is not knowledge of the company, but the burden
is upon the plaintiff to show that such knowledge of the brakeman
was brought home to the company by a report or otherwise to
the conductor in charge of the train, or other competent authority
charged with the duty of having the defect remedied; and unless

the jury believe from the evidence that the knowledge was so brought home to the company, and the opportunity then given for remedying the defect by proper repair, they must find for the defendant.

"(D) The court instructs the jury that under the rules of the Southern Railway Company, in evidence before it, it was the duty of the plaintiff to make such reasonable inspection of the brakes as would discover open and obvious defects, and report the same to conductor, and if plaintiff failed to do so he cannot recover for an injury resulting from such defect in the brake."

*Munford, Hunton, Williams & Anderson,* for the plaintiff in error.

*Montague & Montague* and *O'Flaherty & Fulton,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Childrey, a brakeman of the Southern Railway Company, sustained an injury, for which he sued and recovered a judgment. During the progress of the trial exceptions were reserved to rulings of the court upon instructions and upon a motion to set aside the verdict as contrary to the law and the evidence, which are before us for review.

Instruction No. 1, given at the instance of the defendant in error, is substantially identical with an instruction approved by this court in *Norfolk & Western Ry. Co.* v. *Ampey,* 93 Va. 108, 25 S. E. 226, but is in conflict with every decision of this court touching upon the question from that time down to the most recent case of *Southern Ry. Co.* v. *Foster,* 111 Va. 763, 69 S. E. 972. The situation calls for an explanation.

Referring to the record in *Norfolk & Western Ry. Co.* v. *Ampey, supra,* it will be found that in the petition for a writ of error the following language is used with reference to this instruction: "The proposition of law laid down in this instruction, while sound in the abstract, is not applicable to the case at bar." When the

court, speaking through Judge Riely, came to deal with this instruction in its opinion, it used the following language: "The first instruction given by the court announced the proposition that it was the duty of the defendant company to provide safe and suitable machinery and appliances, and to furnish competent and vigilant servants for the conduct of its business, and that the plaintiff had the right to presume that it had done so. *It is conceded that the instruction correctly propounds the law.* It is equally clear that it directly applied to the issue made by the pleadings. It was not, therefore, liable to the objection that it announced merely an abstract principle of law."

So it plainly appears that the question which we are now to consider, as to the propriety of the instruction, was not brought to the attention of the court nor passed upon by it in the Ampey case, which was decided April 23, 1896, and makes no reference to the case of *Bertha Zinc Co.* v. *Martin's Adm'r*, reported in the same volume, 93 Va. 791, 22 S. E. 869, 70 L. R. A. 999, but which was decided September 19, 1895.

In *Bertha Zinc Company* v. *Martin, supra,* the duty owed by the master to the servant was the controlling feature, and was the subject of very careful consideration. Judge Buchanan, speaking for the court, reached the conclusion that it is the duty of the master to exercise ordinary care—that is, such care as reasonable and prudent men use under like circumstances—in providing safe and suitable appliances for the use of the servant, and that the degree of care required in such cases is to be ascertained by the general usages of the business.

The real point in controversy in *Norfolk & Western Ry. Co.* v. *Ampey,* and the point upon which the case turned, was whether or not the conductor was to be considered a fellow servant of the brakeman who was injured, or stood to him in the relation of vice-principal, and it was held that under the facts of that case the conductor was not a fellow servant.

In the case of *McDonald* v. *Norfolk & Western Ry. Co.*, 95 Va. 98, 27 S. E. 821, which was decided in July, 1897, and in which Judge Riely also delivered the opinion, the first paragraph declares that "It is a general principle of the law of master and servant that the master shall use ordinary care and diligence to provide

reasonably safe and suitable machinery and appliances for the use of the servant, and the master will be held liable for an injury to the servant which results from the omission to exercise such care and diligence." Citing, among other authorities for the proposition, *N. & W. Ry. Co.* v. *Ampey* and *Bertha Zinc Co.* v. *Martin.*

Counsel for defendant in error insist that there is no difference in substance between the exercise of ordinary care in providing sound and safe brakes and appliances, and ordinary care to provide reasonably sound and safe brakes and appliances; that the word "ordinary" measures the degree of care, and the repetition of the word "ordinary" by "reasonable," its equivalent, is a futile requirement. We cannot concur in this view. If it be the duty of the employer to furnish sound and safe brakes and appliances, then he is required, if it can be done, to furnish appliances which are absolutely safe, which is a very different thing from requiring him to furnish appliances which are reasonably safe. If it be his duty to furnish appliances which are absolutely safe, and no effort is made to do that, but the employer contents himself with making a reasonable effort to supply reasonably safe appliances, he has, beyond doubt, fallen short of the duty imposed upon him by law; and this view is maintained by very numerous decisions of this and other courts. See *Bertha Zinc Co.* v. *Martin, supra,* where it is said: "The instruction given on this point declares it to be the master's duty to provide, not reasonably safe, sound, and suitable appliances and instrumentalities for the use of the servant, but it implies that they must be absolutely safe, sound, and suitable. *McDonald* v. *N. & W. Ry. Co., supra; Riverside Cotton Mills* v. *Green,* 98 Va. 60, 34 S. E. 963; *Southern Ry. Co.* v. *Mosee,* 98 Va. 692, 37 S. E. 285; *N. & W. Ry. Co.* v. *Cromer,* 99 Va. 763, 40 S. E. 54; *A. & D. Ry. Co.* v. *West,* 101 Va. 13, 42 S. E. 914; *Parlett* v. *Dunn,* 102 Va. 459, 46 S. E. 467; *Wood* v. *Southern Ry. Co.,* 104 Va. 650, 52 S. E. 371.

The most recent case on the subject is *Southern Ry. Co.* v. *Foster,* 111 Va. 763, 69 S. E. 972, in which Judge Buchanan, speaking for the court, says: "Instruction No. 2 was objected to and is erroneous in this, that it imposed a higher degree of care on the master than is imposed by law. It is his duty to exercise ordinary

care to provide, not safe and suitable appliances and instrumentalities, but reasonably safe and suitable appliances and instrumentalities, for the use of his servant."

Nor is this court alone upon this proposition. We shall refer to but one decision from other courts, but that is the unanimous decision of the Supreme Court of the United States, in which Mr. Justice Lamar says: "Neither individuals nor corporations are bound, as employers, to insure the absolute safety of the machinery or mechanical appliances which they provide for the use of their employees. Nor are they bound to supply the best and safest or newest of those appliances for the purpose of securing the safety of those who are thus employed. They are, however, bound to use all reasonable care and prudence for the safety of those in their service, by providing them with machinery reasonably safe and suitable for the use of the latter. If the employer or master fails in this duty of precaution and care, he is responsible for any injury which may happen through a defect of machinery which was, or ought to have been, known to him, and was. unknown to the employee or servant. But if the employee knew of the defect in the machinery from which the injury happened, and yet remained in the service, and continued to use the machinery, without giving any notice thereof to the employer, he must be deemed to have assumed the risk of all danger reasonably to be apprehended from such use, and is entitled to no recovery. And, further, if the employee himself has been wanting in such reasonable care and prudence as would have prevented the happening of the accident, he is guilty of contributory negligence, and the employer is thereby absolved from responsibility for the injury, although it was occasioned by the defect of the machinery, through the negligence of the employer.

"The State decisions in harmony with the principles laid down by this court on this subject are too numerous for citation." *Washington & Georgetown R. Co.* v. *McDade,* 135 U. S. 554, 34 L. Ed. 235, 10 Sup. Ct. 1044.

We are of opinion that the court erred in giving instruction No. 1.

Instruction No. 3 tells the jury that the plaintiff had the right

to assume, at the time he received the injuries in question, that the defendant had furnished him with a reasonably safe brake for him to discharge his duties as brakeman for the defendant. This instruction ignores the rule by which the brakeman himself was required to inspect the brake before using it, but of this we shall have more to say when we come to discuss instruction No. 6.

Instruction No. 4 seems to be liable to the same objection.

The first paragraph of instruction No. 6 correctly states the law, but the second paragraph ignores and disregards the duty of the brakeman to make inspection of the brakes which he is required to use. The inspection required of him is, of course, not so thorough as that which should be made by those whose special duty it is to make inspection, and who have time and opportunity and a greater familiarity with their duties in this respect than a brakeman has; but it was the duty of the brakeman to look out for open and obvious defects in the brakes on the train upon which he was working on the day of the accident, and it was none the less his personal duty to make such reasonable inspection because the railroad company employed a force of men, separate from the brakeman, in its employ, whose special duty it was to inspect cars and trains, and see that they were in proper and reasonable condition for service. The operation of railroads involves great danger to life and property; the utmost care and caution cannot wholly obviate the dangers incident to the service; but railroad companies are held to the very highest degree of duty with respect to passengers and property committed to their care, and are liable for any accident against which human foresight can guard. Their duty to their employees is to use reasonable care for their protection, and, in order to meet the obligations imposed upon them by law, they adopt rules for the government of their employees and prescribing and regulating the performance of their respective duties. They have a trained corps of inspectors, but, in order to secure additional safety, they require every employee, brakemen included, to consider and observe, with that degree of care that may be consistent with the discharge of their other duties, the condition of the machinery and instrumentalities connected with their particular duties.

These views are illustrated and enforced in the following cases:

In *Browder* v. *Southern Ry. Co.*, 107 Va. 14, 57 S. E. 574, it is said: "Where by the terms of employment the servant is charged with the duty of inspecting the machinery and appliances which he is using, or with the duty of both inspecting and repairing them, he cannot recover for injury sustained because of defects in such machinery and appliances, if he neglects his duty in that regard, and if the defects are discoverable by proper inspection." *Bowers* v. *Bristol, &c. Co.*, 100 Va. 533, 42 S. E. 296.

In *Terre Haute, &c. R. Co.* v. *Pruitt*, 25 Ind. App. 27, 57 N. E. 949, it was held that "Where, under a rule furnished by a railroad company to its brakeman, he was required to examine and ascertain that the hand rails on cars were in proper condition for use, it was error, in an action by him for injuries caused by an insecure hand rail, to instruct the jury that·he had a right to presume that the railroad had used reasonable care to furnish reasonably safe appliances, since such rule was reasonable and constituted an element of the contract of hiring, disregard of which precluded recovery, unless obedience thereto would have augmented the danger or been impracticable." In *Alabama Great Southern R. Co.* v. *Carroll*, (C. C. A.) 84 Fed. 772, it was held that a brakeman, having access to the reasonable rules of a railroad company, requiring him to inspect links and drawheads of cars making up a train upon which he is employed, cannot recover for injury resulting from a defective link discoverable by proper inspection. *Beale* v. *B. C. & St. L. Ry. Co.*, 38 W. Va. 525, 18 S. E. 729.

In *Illinois Cent. R. Co.* v. *Jewell*, 46 Ill. 99, 92 Am. Dec. 240, it is said: "Where the printed rules of a railroad company required each conductor, before moving a train, to inform himself of the condition of the cars composing it, and the conductor failed to do so, and was injured by reason of defective brakes, it was held that he could not recover."

In *Memphis & Charleston R. Co.* v. *Graham*, 94 Ala. 548, 10 South. 286, the court said: "It cannot be expected of car conductors or brakemen to make the same careful examinations, and to be able to discover defects, to the same extent as that expected or required of the employer or master or person entrusted generally with this duty for the public safety or safety of employees, but the character of the general duties to be performed by the

conductors and brakemen is such that they necessarily become more or less familiar with the appliances and machinery constantly in their use and under their supervision, and know, to some extent, when they are not in proper condition for safe use.    To the extent of their information and the opportunities afforded to make such examination, consistently with other duties and the circumstances attending, they should observe and obey the rule."

Of the instructions "A," "B," "C," and "D," asked for by plaintiff in error, the first was properly refused.    It follows from what we have already said, that instruction "B" should have been given; and the same is true of instruction "D."

With respect to instruction "C," the law is stated by Labatt, at section 149, as follows, and a great number of cases in support of it are cited in the note: "The knowledge of an employee who was a mere co-servant of the injured person is not chargeable to the master.    In other words, the master will not be regarded as negligent in not knowing of a defect which is not known to any officer or agent for whose negligence the master would be responsible."

The case must, therefore, be reversed for errors in the instructions, and if upon the next trial there be sufficient evidence before the court, the jury should be instructed in accordance with the view expressed in this opinion.

We do not deem it proper or necessary to discuss the motion for a new trial upon the ground that the verdict was contrary to the evidence, as the case must be reversed and remanded.

*Reversed.*