# Richmond.

## RINEHART & DENNIS CO., INC., V. BROWN.

### November 15, 1923.

1. NEGLIGENCE—*Evidence—Casualty Insurance.*—The fact that a defendant is insured against accident can throw no light on whether or not he has been negligent in a given case. Consequently, evidence of such insurance is irrelevant and inadmissible in an action against a defendant for a negligent injury.

2. ARGUMENTS OF COUNSEL—*Improper Argument—Direction of Court to Disregard—New Trial.*—Improper questions and remarks of counsel in the examination of witnesses may require the granting of a new trial, but only where they have probably misled or prejudiced the jury. Generally a new trial will be denied where improper argument has been checked by the court and the jury has been instructed to disregard the improper statements. If, however, counsel persists in such argument after the admonition of the court, or if it appears that the unfavorable influence of the argument was probably not wholly removed by the court's action, a new trial may be allowed. A new trial may be granted, although the improper statements have been qualified or withdrawn by counsel.

3. ARGUMENTS OF COUNSEL—*Improper Argument—Direction of Court to Disregard—New Trial—How Prejudice Ascertained.*—It cannot be said that the existence of prejudice on the part of the jury arising from improper argument of counsel can be ascertained only by determining whether the verdict in its amount disclosed prejudice or disregard of the evidence. In particular cases that may be the only method. But there may be cases in which the evidence may not warrant any recovery by the plaintiff, or the evidence leaves it doubtful if the plaintiff is entitled to recover, where a verdict for the plaintiff for any amount may be said to have been induced, or certainly influenced by the improper remarks of counsel. In such cases the verdict should be set aside.

4. MASTER AND SERVANT—*Evidence—Argument of Counsel—Casualty Insurance of Master—Instruction to Disregard—Case at Bar.*—In the instant case, an action by a servant against his master for personal injury, the subject of the master's casualty insurance was brought to the attention of the jury not accidentally, nor incidentally, but deliberately. Not only once, but several times. First in the

opening statement of counsel. Next on the cross-examination of one of defendant's witnesses, and was again about to be introduced in the argument of counsel before the jury, when counsel was stopped by the court at the instance of opposing counsel. The trial court instructed the jury to disregard the statements of counsel about the insurance, and warned counsel about making a similar statement.

*Held:* That the continued and persistent effort to get before the jury the fact of insurance of defendant in spite of the ruling of the court produced a condition which could not be reached by so mild an antidote as an instruction to the jury to disregard the fact of the master's casualty insurance. The verdict for the plaintiff should have been set aside and a new trial awarded the defendant.

5. Master and Servant—*Casualty Insurance—Emphatic Instructions to Disregard—Presumption that Jury Understood Instructions—Case at Bar.*—In the instant case counsel for plaintiff laid stress on the fact that the trial court was emphatic in instructing the jury to disregard improper references by counsel for plaintiff to defendant's casualty insurance, and obtained from them an indication that they understood the court's instruction.

*Held:* That no special importance could be attached to these facts, as in the absence of evidence to the contrary, it is always presumed that the jury understood the instructions of the court, and it is their duty to obey them.

6. Appeal and Error—*Harmless Error—Policy of the Supreme Court of Appeals.*—It has been the policy of the Supreme Court of Appeals for many years, and is still, to subordinate form to substance, and not to allow the substantial rights of parties to be taken away for the sake of adherence to any forms of procedure not essential to the orderly conduct of judicial proceeding.

7. Appeal and Error—*Burden on Plaintiff to Show Substantial Error—Correction of Substantial Error.*—A plaintiff in error must always show, not only error in the rulings of the trial court, but error of a substantial nature; but when once he has pointed out an error of a substantial character he is entitled to have it corrected, if it appears from the record that there is reasonable probability that it did him any harm.

8. Appeal and Error—*Harmless Error—Presumption that Error is Harmless.*—There is no presumption that an error is harmless.

9. Appeal and Error—*Harmless Error—Section 6331 of the Code of 1919.*—Section 6331 of the Code of 1919 is only applicable where it plainly appears from the record that there has been a fair trial on the merits, and that substantial justice has been reached. If the record shows this, then the formal errors are to be ignored, and it is only when this condition plainly appears from the record that the statute is applicable.

10. Master and Servant—*Master's Liability—Master not Insurer—Accident.*—The master is not liable for injuries to the servant arising out of an accident, an event happening unexpectedly, and without fault on the part of any one. The master is not an insurer of the safety of his servant, and he is liable for the consequences, not of danger, but of negligence.

11. Master and Servant—*Duty of Master as to Safe Place to Work—Assumption of Risk.*—The obligation of the master is not to provide a safe place for his servant to work, but to use *ordinary care* to *provide a reasonably safe place,* and the servant assumes all of the ordinary risks of the service. The master is under no obligation to provide against contingencies which are not to be reasonably anticipated.

12. Master and Servant—*Injury to Servant—Carpenter Swinging down from Roof after Ladder was Blown Away—Case at Bar.*—In the instant case plaintiff, a carpenter, employed by defendant, a general contractor, was injured by attempting to swing from the roof of a building to the roof of a building below. Just before plaintiff, who was at work on the roof of the higher building, was injured a storm appeared to be coming up and defendant's foreman directed the carpenters to "stay on the building and finish the roof." The storm was very severe and when the carpenters attempted to descend they found that the ladder had been blown away, and therefore descended by swinging to the lower roof. It appeared from the evidence that the carpenters usually put up the ladders, and if fastening them to the building was the proper method of use for their safety, they were intrusted with the performance of that duty. It was the master's method of doing his business with which plaintiff was familiar, and he assumed the risk of it. But, even if the duty of keeping ladders at the building was a duty devolved upon the master, it could not be said that the blowing down of the ladder by a sudden storm, and its replacement as soon as possible, was the lack of ordinary care on the part of the master.

*Held:* That whether the case be viewed from the standpoint of the duty of the master, or the assumption of risk by the servant, or both, the evidence did not establish any liability on the master.

Error to a judgment of the Corporation Court of the city of Charlottesville in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*S. L. Sinnott* and *Duke & Duke & Gentry,* for the plaintiff in error.

*Perkins, Walker & Battle* and *Allen, Walsh & Michie,* for the defendant in error.

Burks, J., delivered the opinion of the court.

Rinehart & Dennis Company, Incorporated, had contracted to build numerous houses at Camp Lee, near Petersburg, and had employed a number of men, including the defendant in error, Brown, to do the work. This action was brought by Brown, the defendant in error, hereinafter called the plaintiff, against Rinehart & Dennis Co., Inc., hereinafter called the defendant, to recover damages for a personal injury alleged to have been sustained in consequence of the negligence of the defendant.

Counsel for the plaintiff in his opening statement to the jury said "that the Rinehart & Dennis Company was nominal defendant, and further stated that the real defendant was the Maryland Casualty Company, or words to that effect, to which statement counsel for the defendant, the Rinehart & Dennis Company objected, and the court promptly sustained the objection; and the said Walker (counsel for the plaintiff) said during colloquy between counsel and court that the counsel for the Maryland Casualty Company was then in court representing the defendant. To both of which statements defendant by counsel objected and asked that the jury be discharged from the consideration of the case on account of these statements. The court, however, refused to so discharge the jury but verbally and positively instructed them that the only defendant in this case was the Rinehart & Dennis Company and that the question as to whether they were insured or not had nothing to do with the case, and that they were not to consider any statement of counsel that they were so

22

insured, in any manner whatsoever. And the court further asked the jury if they fully understood that, and they indicated they did. To which action of the court in failing to discharge the said jury the counsel for defendant excepted."

Afterwards, when Percy H. Faulconer, a witness for the defendant, was on the stand, counsel for the plaintiff, on cross-examination, asked him: "Mr. Faulconer, your company carried casualty insurance, did it not? To the making of this statement by counsel for plaintiff the defendant objected and the court sustained the objection and directed the jury in an emphatic manner not to consider this question at all, and warned counsel against making a similar statement. The defendant then asked that the jury retire, which they did, and counsel then moved the court to discharge the jury because the plaintiff's counsel by his question had let the jury understand that the defendant, who was a local company, would not have to pay a verdict, if one was had; but the court declined to discharge the jury. The jury was then brought back and the court again emphatically instructed the jury that they must not consider the question that had been asked, and they should consider only the Rinehart & Dennis Company as party to this suit. And the jury again indicated plainly to the court that it would not be influenced by the improper statements of counsel, and the court held it was not prejudicial under all the circumstances. To which action of the court in failing to so discharge the jury the counsel for defendant excepted."

Again, after the evidence was closed, during the argument of the case before the jury, "the said counsel, in his argument, apparently started to reiterate before the jury something about Mr. Sinnott representing somebody. Counsel for the defendant at once interrupted

the said Walker and protested and objected against any further statement, and Mr. Walker stopped. The court again verbally instructed the jury that they must disregard the intimation of the said Walker and pay no attention whatever to it.  To which action of the said Walker defendant excepted."

[1] It is assigned as error that the trial court overruled the defendant's motion to discharge the jury on account of the misconduct of counsel.  It is too manifest to need argument, and indeed is conceded everywhere, that the fact that a defendant is insured against accident can throw no light on whether or not he has been negligent in a given case.  Consequently, evidence of such insurance is irrelevant and inadmissible in an action against a defendant for a negligent injury.  *Va.-Car. Chem. Co.* v. *Knight*, 106 Va. 674, 56 S. E. 725. What is the effect, however, of getting such evidence before the jury, over the objection of the defendant? Counsel for the defendant in error admit that the subject of the casualty insurance was not a proper subject of consideration by the jury, but insist that the verdict of the jury cannot be set aside on account of the reference to the insurance unless there is a manifest probability that these statements have been prejudicial to the adverse party, and that whether prejudice has occurred can be ascertained *only* by determining whether the verdict in its amount discloses prejudice and disregard of the evidence.

[2] It is said in *Wash. & O. D. Co.* v. *Ward*, 119 Va. 334, 339, 89 S. E. 140, 142, that "a judgment ought not to be reversed for the admission of evidence, or for a statement of counsel, which the court afterwards directs the jury to disregard, unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party." But the opinion also states

that "there are cases in which the error of admitting improper testimony, or the effects of the mere statement of counsel, cannot be adequately overcome by a subsequent direction to the jury to disregard the objectionable evidence or statements. The opinion refers to 29 Cyc. 775-783 and cases cited for a general discussion on the subject. It is there said, amongst other things, "Improper questions and remarks of counsel in the examination of witnesses may require the granting of a new trial, but only where they have probably misled or prejudiced the jury. * * * * * Generally a new trial will be denied where improper argument has been checked by the court and the jury has been instructed to disregard the improper statements. If, however, counsel persists in such argument after the admonition of the court, or if it appears that the unfavorable influence of the argument was probably not wholly removed by the court's action, a new trial may be allowed. A new trial may be granted, although the improper statements have been qualified or withdrawn by counsel." We think this is a correct statement of the law.

[3] In *P. Lorillard* v. *Clay*, 127 Va. 734, 752, 104 S. E. 384, 390, it is said "It will be observed that no objection was made or exception taken to the last three statements of counsel until after the verdict, and then only retrospectively as indicating that the verdict was the result of prejudice induced by the improper argument of counsel." Again, "Counsel for the defendant insists the wrong done was not righted, nor the poison given eradicated, by the action of the court, as is manifested by the excessive amount of the verdict, and we are asked to take a retrospective view of all of the remarks of counsel, both those that were and those that were not excepted to, so as to see the atmosphere created by them

surrounding the jury at the time they rendered their verdict." It was in response to these requests that this court said: "We must consider then whether the amount of the verdict was such as to indicate that the jury were probably improperly influenced by the remarks of counsel." It was not said that the existence of prejudice on the part of the jury could be ascertained *only* by determining whether the verdict *in its amount* disclosed prejudice or disregard of the evidence. In that particular case it did, and that was all that it was necessary to investigate, but that was not announced as a universal test. There may be cases in which the evidence may not warrant any recovery by the plaintiff, or the evidence leaves it doubtful if the plaintiff is entitled to recover, where a verdict for the plaintiff for any amount may be said to have been induced, or certainly influenced, by the improper remarks of counsel. In such cases the verdict should be set aside.

A number of cases have come before this court in recent years involving the misconduct of counsel in the examination of witnesses or their arguments before the jury, some of which are reviewed in the cases hereinbefore cited. *Wash. & O. D. Co.* v. *Ward, supra*; *Norfolk & W. R. Co.* v. *Allen & Sons*, 122 Va. 603, 95 S. E. 406; *McCoy* v. *Comth.*, 125 Va. 771, 99 S. E. 644; *Sands* v. *Norvell*, 126 Va. 384, 101 S. E. 569; *Lorillard Co.* v. *Clay*, 127 Va. 374, 104 S. E. 384; *Seay & Day* v. *Comth.*, 135 Va. 737, 115 S. E. 574; *Atlantic Coast Realty Co.* v. *Robertson*, 135 Va. 247, 116 S. E. 476. A detailed review of these cases would unnecessarily protract this opinion, without special profit. They furnish no support for persistence in wrong doing. In inadvertent cases, and cases where no serious harm seems to have been probably done, we have given controlling effect to the judgment of the trial court. In several we have felt compelled to reverse.

[4] In the case in judgment, it will appear further on that we are of opinion that the evidence was not sufficient to warrant any verdict in favor of the plaintiff. But even in a case where the right of the plaintiff to recover is doubtful, the trial court should be alert to prevent any adventitious advantage that may turn the scales. The determination of the issue should not be prejudiced by improper evidence, or by any improper procedure which may affect the result. The plaintiff here has been allowed to obtain the advantage of having the attention of the jury called to the insurance, a wholly collateral subject, which was likely to influence the mind of the average juror notwithstanding the instructions of the trial court. The reception of such evidence sometimes has a subtle influence that will act unconsciously upon the mind, and hence not be removed by instructions. The subject of the casualty insurance was brought to the attention of the jury not accidentally, nor incidently, but deliberately. Not once, but several times. First in the opening statement of counsel. Next on the cross-examination of one of the defendant's witnesses, and was again about to be introduced in the argument of counsel before the jury, when counsel was stopped by the court at the instance of opposing counsel. The trial court instructed the jury to disregard the statements of counsel about the insurance and warned counsel against making a similar statement. No such warning was necessary. The court had clearly stated the law on the subject when the objection was first made, and this was all the warning needed. The continued and persistent effort to get before the jury the fact of insurance of the defendant in spite of the ruling of the court produced a condition which could not be reached by so mild an antidote as an instruction of the court, or at least there is a reasonable probability that

the jury was influenced by it to the prejudice of defendant. Upon such a state of facts, many courts of other States have held, and we think properly, that a verdict for the plaintiff, if there is one, should be set aside and a new trial awarded the defendant. The cases are too numerous to do more than cite a few of them and give reference to sources from which others may be supplied. Among the authorities sustaining these views, see *Akin* v. *Lee*, 206 N. Y. 20, 99 N. E. 85, Ann. Cas. 1914A, 947; *Edwards* v. *Earnest*, 206 Ala. 1, 89 So. 729, 22 A. L. R. 1387; 29 Cyc. 775-777; *Manigold* v. *Black River T. Co.*, 80 App. Div. 381, 80 N. Y. S. 861; *Hordern* v. *Salvation Army*, 124 App. Div. 674, 109 N. Y. S. 131; *Bishop* v. *Chicago R. R. Co.* (1919), 289 Ill. 63, 124 N. E. 312; *Coon* v. *Manley* (Tex. Civ. App.), 196 S. W. 606; *Lone Star Gas Co.* v. *Coates* (Tex. Civ. App.), 241 S. W. 1111; *Kinnaman* v. *Kinnaman*, 71 Ind. 417; *Mainard* v. *Reider*, 2 Ind. App. 115, 28 N. E. 196; *Stanley* v. *Whiteville L. Co.*, 184 N. C. 302, 114 S. E. 385. In *Winter* v. *Sass*, 19 Kan. 556, 566, Judge Brewer said: "All that can be safely laid down is, that whenever in the exercise of a sound discretion it appears to the court that the jury may have been influenced as to their verdict by such extrinsic matters, however thoughtlessly or innocently uttered, or that the statements were made by counsel in a conscious and defiant disregard of his duty, then the verdict should be set aside." We are of opinion that the trial court erred in not sustaining the motion of the defendant to discharge the jury as set out in bill of exception No. 5.

[5] Counsel for plaintiff lay stress on the fact that the trial court was emphatic in instructing the jury to disregard the improper reference to the insurance, and obtained from them an indication that they understood the court's instruction. We do not attach special im-

portance to these facts.   In the absence of evidence to the contrary, it is always presumed that the jury understand the instructions of the court, and it is their duty to obey them.

Counsel for the plaintiff also seek to minimize the effect of the New York cases because they say that under the New York rule the judgment of the trial court will be reversed in all cases where error occurs unless it clearly appears that the error was harmless, and that the burden is on the defendant in error to show that it was harmless, while the rule is otherwise in Virginia, and to show that such is the rule in Virginia the following paragraph is quoted from *Standard Paint Co.* v. *Vietor,* 120 Va. 595, 610, 91 S. E. 752, 757:

[6, 7] "Since the act of March 27, 1914, *supra,* it is apparent that this court should extend the doctrine of harmless error to its logical conclusion, namely, that error is harmless which does not injuriously affect the interests of the party complaining, and that such injury is not presumed but must affirmatively appear from the record; for that act, in simple and unambiguous language, directs the courts, at every stage of the proceeding, to disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." This is straining the decision beyond its import.   The opinion intended to go no further than the statute itself which directs the courts "at every stage of the proceeding, to disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Whether the statute changed the law theretofore existing or was simply declaratory thereof is a question about which different opinions have been entertained.   But whichever view may be correct, it has been the policy of this court for many years, and is still, to subordinate form to substance, and not to allow the

substantial rights of parties to be taken away for the sake of adherence to any forms of procedure not essential to the orderly conduct of judicial proceeding. Our reports are filled with cases of harmless error. A plaintiff in error must always show not only error in the rulings of the trial court, but error of a substantial nature, but when once he has pointed out an error of a substantial character he is entitled to have it corrected if it appears from the record that there is reasonable probability that it did him any harm. But our position is well sustained not only by the New York cases, but by cases from other States, some of which we have cited.

[8, 9] Since the decision in *Standard Paint Co.* v. *Vietor, supra,* the Code of 1919 has gone into effect and it is provided by section 6331 that no judgment shall be reversed "for any error committed on the trial where it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." This goes the limit of harmless error and was so intended, as appears from the note of the revisors attached to that section. It will be observed, however, that there is no presumption that an error is harmless. This provision of the statute is only applicable where it plainly appears from the record that there has been a fair trial on the merits and that substantial justice has been reached. If the record shows this then the formal errors are to be ignored and it is only when this condition plainly appears from the record that the statute is applicable.

We come now to a consideration of the case on its merits as disclosed by the evidence.

Rinehard & Dennis Co., Inc., was a general contractor for the construction of buildings at Camp Lee, and employed a general superintendent of building, a foreman for each separate building, and numerous work-

men under the foremen.   J. J. Brown was what may be termed a rough carpenter, engaged with others in the construction of a frame building 123 feet long by forty feet wide, running north and south.   The roof was about nine feet slope, and the eaves extended about twenty-four inches over the wall of the building.   At the north end of the building there was a kitchen, the roof of which was about eight feet lower than the roof of the main building.   There was a ventilator on the kitchen roof, near where it joined the main building, three feet wide and four inches above the roof of the kitchen. ·  Ladders were made by the carpenters for use in going upon the buildings under construction, and one of these was used by Brown and his companions for that purpose on the day of the accident hereinafter mentioned.   On July 15, 1917, Brown was engaged with others in putting on the last strip of rubber roofing. What then took place is detailed by Brown in his testimony as follows:

"A storm cloud was coming up.   The head foreman or superintendent of buildings, named Harry Cordal, came upon the roof of the building and told us a cloud was coming up, and said to us to stay on the building and finish the roof, so as to get it covered before the storm and protect the inside of the building.   A heavy wind and rain soon came up.   The wind was so strong that it blew the strip of roofing in two which we were nailing on the roof.   The strip of roofing was about thirty feet in length.   The storm was very severe; wind, rain and hail.   The hail was so severe that it burnt me.

"We had come up on the building by the ladder which had been provided for the carpenters.   When the storm came up we looked and did not see any ladder. We called and hollered for help, but could not see anyone.   I went half way down the roof, but could not see

any ladder at all. The ladder had blown down. We had to get off the building out of the wind and storm in order to keep from being blown off, and the only apparent safe way to do was to get down from the building to the roof of the kitchen. Five of the men who were with me dropped off to the kitchen roof about eight feet. I was the sixth one to leave. I was holding to the roof and a man on the roof was holding my wrist. I slipped and fell and dropped to the kitchen roof and broke my hip." * * * * "The effect of the order of the superintendent or foreman upon us was that we stayed until the wind and rain compelled us to leave. Before I left I looked for the ladder but it was not there. I looked just before I swung down. All of us hollered for help but I could not see anybody. The people on the ground went into the building on account of the storm. The wind was very severe, also the hail. I could hardly stand up. The wind was a regular storm and the roof was steep. There was a ventilator on the kitchen roof three feet wide and four inches above the roof of the kitchen. Five of the men went down on that ventilator ahead of me. I could not quite touch the ventilator with my foot and I had a drop of from eight to twelve inches. I may have dropped a foot but it was a short distance. I swung down and when I swung I dropped. I fell over the comb of the ventilator and broke my hip and thigh."

On cross-examination he testified, amongst other things, "that carpenters sometimes put up ladders and if he had gotten there first that morning he might have helped to put that ladder up. That while carpenters usually put up ladders he did not at any time ever help any of them or ever saw anybody put up any ladders on this job. That the eaves extended over and beyond the building about twenty-four inches and he could not

have seen a ladder placed under it, and a ladder under the eaves would not have helped. That he would not say the ladders were always put up under the direction of overseers; that there was a foreman carpenter on each building."

A witness for the defendant testified: "The storm came up very suddenly and the ladder was near the opposite end of the building, the wind blew it down. I got it back as soon as possible for the men on the roof to come down on. I could not see the men on the roof at the time. I got on a pile of lumber and called to them to let them know the ladder had been replaced, but they did not seem to hear me. I sent a man up the ladder to tell them but he did not seem to be able to attract their attention and they all came down over the gable. I did not see Mr. Brown fall."

Another witness for the defendant testified that he was the only eye-witness to the accident; that they were caught on the roof by the storm and the wind had blown the ladder down so they had to climb down on the shed over the gable; that he had handed to one of the men who had gone down his tools and the latter had laid them on the kitchen roof; that he assisted Brown in getting down, held him by his hands and let him down; that the roof was wet, and his feet slipped from under him, and he fell across the ventilator and on the handle of the saw of witness which one of his fellow-workmen had placed there; that the roof of the shed is about eight feet below the main roof, and that Brown's feet were touching the roof of the shed when he slipped and fell across the ventilator. It is nowhere intimated that when the carpenters put up the ladders for their own use they were in any way fastened or attached to the buildings, nor is there an intimation in the record that the carpenters or anyone else thought it necessary or proper to fasten the ladders to the building.

[10,11] Upon these facts, we are unable to discover the primary negligence of the master. What has happened is an accident, an event happening unexpectedly and without fault on the part of anyone. As has been often said by this court, the master is not an insurer of the safety of his servant, and he is liable for the consequences, not of danger but of negligence. Furthermore, it must be borne in mind that the obligation of the master is not to provide a *safe place* for his servant to work, but to use *ordinary care* to *provide a reasonably safe place,* and that the servant assumes all of the ordinary risks of the service. The master is under no obligation to provide against contingencies which are not to be reasonably anticipated. The subject is fully discussed and the authorities reviewed in *Southern R. Co. v. Childrey,* 113 Va. 376, 74 S. E. 221. Among the authorities reviewed are *Washington and G. R. Co. v. McDade,* 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235, and *McDonald* v. *Norfolk & W. R. Co.,* 95 Va. 98, 27 S. E. 821. In the latter case it was held that "It is the duty of the master to use ordinary care and diligence to provide reasonably safe and suitable machinery and appliances for the use of the servant. The servant assumes all the ordinary risks of the service. He assumes, as a rule, all risks arising from causes known to him, or which are open and obvious, and must use reasonable care and caution for his own safety. If machinery and appliances are defective or unsuitable, and this fact is known to the servant, and he remains in the service, and continues to use them without giving notice thereof to the master, or without any promise from the master to render the same less dangerous, he will be taken to have assumed the risk of all danger to be reasonably apprehended from their use, and is bound to use the care and caution which the situation demands."

[12] There was considerable discussion as to whose duty it was to provide the ladders and keep them in place. It is immaterial whose duty it was to provide the ladders as they were in fact provided.   As to fastening them or keeping them in place, it sufficiently appears from the testimony of Brown himself that the ladders were provided and that the "carpenters usually put up ladders." They were provided with proper and safe appliances and were entrusted with the proper use of them for their own safety.   If fastening them to the building was the proper method of use for their safety, they were entrusted with the performance of that duty.   *Fewell* v. *Southern R. Co.*, 105 Va. 1, 52 S. E. 689; *White* v. *Newport News Co.*, 95 Va. 355, 28 S. E. 577.   It was the master's method of doing his business with which Brown was familiar and he assumed the risk of it. *Southern R. Co.* v. *Foster*, 111 Va. 763, 69 S. E. 972. But even if the duty of keeping ladders at the building was a duty devolved upon the master, it cannot be said that the blowing down of the ladder by a sudden storm, and its replacement "as soon as possible," was the lack of ordinary care on the part of the master.

Whether the case be viewed from the standpoint of the duty of the master, or the assumption of risk by the servant, or both, in no view of the case do we think the evidence established any liability on the master.

The other assignments of error need not be noticed.

We are of opinion that the judgment of the trial court should be reversed and the verdict of the jury set aside, and that final judgment should be entered in this court in favor of the plaintiff in error, and it will be so ordered.

*Reversed.*