# CIRCUIT COURT OF THE CITY OF ROANOKE

Jessie L. Lemons,
a minor, etc., et al.

v.

Abbott Laboratories, Inc., et al.

October 19, 1999

Case No. CL98-97

BY JUDGE CLIFFORD R. WECKSTEIN

This is a suit for personal injuries suffered by Jessie L. Lemons, a child who was born on December 9, 1987. According to the amended motion for judgment filed by Jessie's mother, on her own behalf and as his next friend, a medication called Cylert caused Jessie's liver to fail; he has undergone a liver transplant, his life expectancy has been reduced, and he will suffer other severe and permanent damages as a result of taking Cylert. Cylert, according to the pleadings, is and was manufactured by defendant Abbott Laboratories. The amended motion for judgment states that defendant pharmacists, in the course of their employment by defendant CVS Revco DS, Inc., ("Revco") or a corporate predecessor, at stores owned or operated by Revco, filled Jessie's prescriptions for this medication.

In this pleading, Jessie's mother alleges that the pharmacists who filled Jessie's prescriptions and their employer violated legal duties owed to Jessie in a pharmacist-patient relationship. The amended motion for judgment says that they failed to inform the minor patient and his family of the risks associated with taking Cylert. They were, the plaintiff alleges, obligated under the applicable standard of care to do so. Further, the pleading says, the pharmacists and employer undertook to give the family *some* information about the drug and its side effects. This information, according to the amended motion for judgment, was incomplete and out of date. Revco undertook to

inform the family of risks, complications, and prudent patient behavior, the plaintiff says. Having done so, she asserts, Revco and the pharmacists owed the patient the duty of doing so fully and accurately. According to the amended motion for judgment, they did not so do.

Revco and the pharmacists, noting that the plaintiff alleges that a physician described Cylert and does not allege that they failed to fill the prescriptions in accordance with the physician's directions, have filed demurrers. (Revco and the pharmacists, all of whom are represented by the same lawyers, have not, in their demurrers, differentiated between the acts of individual pharmacists and those of Revco, or between the duties that each might have owed. For the purpose of ruling on the demurrers, then, I will treat them as synonymous.) A demurrer "tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action." *Fun v. Virginia Military Institute*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). When considering these demurrers, I must treat all of the plaintiff's factual assertions as true and give the plaintiff the benefit of all inferences that fairly can be drawn from the facts alleged. I also must assume the truth of all assertions of fact that can be "fairly and justly inferred" from the amended motion. However, the plaintiff is not entitled to the assumption that her legal theories are correct. *Breeding v. Hensley*, 258 Va. 207, 519 S.E.2d 369 (1999); *Runion v. Helvestine*, 256 Va. 1, 7, 501 S.E.2d 411, 415 (1998); *Ward's Equipment, Inc. v. New Holland North America, Inc.*, 254 Va. 379, 383, 493 S.E.2d 516, 519 (1997); *Rosillo v. Winters*, 235 Va. 268, 270, 367 S.E.2d 717, 717 (1998). "A demurrer ... does not allow the court to evaluate and decide the merits of a claim." *Fun v. V.M.I., supra.*

In her amended motion for judgment, Jessie's mother alleges that the pharmacists, in the practice of their profession, did and did not do the things summarized above. What the pharmacists did or failed to do, she says, was a proximate cause of injury to Jessie. These are assertions of fact, which I must accept as true. She also alleges that the pharmacists' acts and omissions violated what she asserts were the prevailing standards of care and applicable legal duties that the pharmacists owed to Jessie, to her, and to Jessie's family. I must fairly infer, from the amended motion for judgment, that if the case proceeds, one or more qualified expert witnesses would, in testimony, identify the applicable standards of care and testify that the acts and omissions described in the amended motion for judgment deviated from these standards of care. Cf. Virginia Code § 8.01-271.1.

Marshaling an array of decisions from a number of jurisdictions and drawing analogies from Virginia cases, Revco and the pharmacists argue that the allegations in the amended motion for judgment are insufficient to state a

cause of action or claim upon which relief can be granted. They contend that as a matter of law, pharmacists who fill patient prescriptions with the prescribed medication in the prescribed dosage fulfill their legal duties; that they owe the patient no additional duty. Unexceptionably, these defendants rely upon the basic principle that "[t]here can be no actionable negligence" — no suit can be maintained — "unless there is a legal duty." *Chesapeake & Potomac Tel. Co. v. Dowdy*, 235 Va. 55, 61, 365 S.E.2d 751, 754 (1988).

Generally, whether a duty exists "is a pure question of law" to be determined by the trial judge, *Burns v. Johnson*, 250 Va. 41, 45, 458 S.E.2d 448, 451 (1995). Counsel have presented voluminous and intellectually stimulating discussions about the role and responsibility of the pharmacist and the relative responsibilities of the dispensing pharmacist and the prescribing physician to their shared patient. In my view, however the question of duty *vel non* is less complex than might appear from the briefs and arguments of counsel. Under the Code of Virginia, pharmacists are "health professionals" who render "professional services"; they are licensed "health care providers." Virginia Code §§ 8.01-581.1, 8.01-581.13, and 13.1-543(A). A "patient," by statute, is a natural person who receives or should have received health care from a licensed health care provider. Va. Code § 8.01-581.1. "In our jurisprudence, a health care provider owes a duty of reasonable care to the patient." *Fairfax Hosp. v. Curtis*, 254 Va. 437, 442, 492 S.E.2d 642, 644 (1997). That, then, is the duty owed by the pharmacists and Revco in this case. See *Nichols v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.*, 257 Va. 491, 514 S.E.2d 608 (1999). This leads to the interesting — but, in my view, not difficult to answer — question of how to determine the *scope* of that duty of reasonable care.

Implicitly, Revco and the pharmacists argue that the trial judge should determine, *as a matter of law*, the scope, limits, or perimeters of this duty of reasonable care. They argue that the trial judge should find, as a matter of law, that the acts and omissions described in the amended motion for judgment *cannot* have constituted deviations from the duty of reasonable care. I do not agree.

These are claims for "malpractice," i.e., for "any tort based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." Code § 8.01-581.1. When the factual assertions of the amended motion for judgment are read in the way they must be on demurrer, it is clear that these claims fit squarely within the ambit of a statutory scheme in which the scope of the duty owed by these health care professionals to Jessie and his family depends upon the relevant "standard of care."

The applicable language of the pertinent statute, Code § 8.01-581.20, reads as follows:

A. In ... any action against a ... health care provider to recover damages alleged to have been caused by medical malpractice where the acts or omissions so complained of are alleged to have occurred in this Commonwealth, *the standards of care by which the acts or omissions are to be judged shall be that degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or specialty in this Commonwealth, and the testimony of an expert witness, otherwise qualified, as to such standard of care, shall be admitted ...* .

B. *In any action for damages resulting from medical malpractice, any issue as to the standard of care to be applied shall be determined by the jury, or the court trying the case without a jury.*

(Emphasis added.)

In my opinion (to paraphrase Horton the Elephant), this statute "means what it says, and says what it means." Geisel, Theodore Seuss (Dr. Seuss), *Horton Hatches the Egg* (McMillan, 1940). "This statute establishes the standard of care imposed upon a health care provider and gives a litigant the right to use qualified expert witnesses to provide testimony regarding that standard." *Beverly Enterprises v. Nichols*, 247 Va. 264, 267, 441 S.E.2d 1, 3 (1994). "Authorities might be multiplied almost without limit to the same effect, but why should authority be cited when the controversy is covered by statute?" *Williams Printing Co. v. Saunders*, 113 Va. 156, 175, 73 S.E. 472, 476 (1912).

Notwithstanding the elegant simplicity of Justice Keith's language in *Williams Printing*, I believe that three things remain to be said, as succinctly as I am able to say them.

The Medical Malpractice Act (currently codified in Code §§ 8.01-581.1 through 8.01-581.20) has been in effect since 1976. I recognize that the Supreme Court of Virginia has decided many cases under the Act. Apparently, however, no published opinion, reviewing a trial judge's ruling on a demurrer to a claim under the Act, explicitly states that the plain language of Code § 8.01-581.20 means what it says. To state the proposition is, of course, to suggest the answer. "It is firmly established that when a statute is clear and unambiguous, a court must accept its plain meaning and not resort to extrinsic evidence or rules of construction. *Gonzalez v. Fairfax Hosp. Sys.*, 239 Va. 307, 310, 389 S.E.2d 458, 459 (1990)." *Yates v. Pitman Mfg., Inc.*, 257 Va.

601, 605, 514 S.E.2d 605, 697 (1999). The Supreme Court applies the "plain meaning rule" to claims arising under the Medical Malpractice Act. *Gonzalez, supra; Glisson v. Loxley*, 235 Va. 62, 366 S.E.2d 68 (1988). "Where the legislature has used words of a plain and definite import, the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed ... . We must also assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute. 'Courts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied'." *Barr v. Town & Country Properties, Inc.*, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (citations omitted).

In cases arising under the Act, the Supreme Court has considered questions, raised on demurrer, about whether particular allegations set forth cognizable claims of deviation from the applicable standard of care. See, e.g., *Fairfax Hosp. v. Curtis, supra*, 254 Va. 437 (duty to patient not to disclose information gained during course of treatment without patient's authorization). And, the Court has, under the Act, stated that there are "rare instances" in which, because the alleged negligent act or omission was clearly within the range of the jury's common knowledge and experience, a plaintiff is not required to present expert testimony about the standard of care. See, e.g., *Dickerson v. Fatehi*, 253 Va. 324, 327, 484 S.E.2d 880, 881 (1997) (jurors, without expert testimony "reasonably could determine, by calling upon their common knowledge and experience," whether a surgeon was negligent in failing to remove a hypodermic needle before closing an operative wound; expert testimony was necessary to establish whether scrub nurses had duties to maintain a needle count.); *Beverly Enterprises v. Nichols, supra*, 247 Va. 264, 267 (1994) ("[W]hether a reasonably prudent nursing home would permit its employees to leave a tray of food with an unattended patient who had a history of choking and who was unable to eat without assistance is certainly within the common knowledge and experience of a jury.") Those decisions support the proposition that litigants in well-pleaded medical malpractice suits have "the *right* to use qualified expert witnesses to provide testimony regarding th[e] standard of care," *Id.* (emphasis added), even in cases in which expert testimony otherwise would be necessary and inadmissible. Nothing in those cases, however, suggests that the judge, ruling on demurrers, is permitted to determine what the standard of care is.

Though the Supreme Court has decided numerous cases under the Act, I do not find any decision which addresses the question of whether the plain language of the Medical Malpractice Act precludes a trial judge, on demurrer,

from determining the scope of the standard of care and whether conduct described in the plaintiff's pleading deviated from that standard. "A question of law not brought to the attention of the court or passed upon by it cannot be considered as decided in a subsequent case involving the same question." *Gaskill v. Commonwealth*, 185 Va. 440, 445, 39 S.E.2d 296, 297 (1946), citing *Southern Ry. v. Childrey*, 113 Va. 376, 383, 74 S.E. 221, 223 (1912). I have here held that when the well-pleaded facts bring a case within the compass of the Act, the Act indeed precludes a judge from making these decisions when ruling on demurrers. (To do so would, of course, also be "to evaluate and decide the merits of a claim," which the judge, on demurrer, cannot do. *Fun v. V.M.I., supra*, 245 Va. at 252.)

I note that Revco and the pharmacists, recognizing the special rules that apply to health care providers under the Act and the Rules promulgated pursuant to the Act, have demanded that the claim against them be reviewed and heard by a Medical Malpractice Review Panel. Because of the view I have taken, I do not reach the question of whether the demand for panel review and hearing might be deemed a waiver of the demurrer. Cf. *Gilpin v. Joyce*, 257 Va. 579, 515 S.E.2d 124 (1999).

For the foregoing reasons, the demurrers will be overruled.