# 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓.

BOWERS v. BRISTOL GAS AND ELECTRIC Co.

September 11, 1902.

100 533
101 750
101 751

100 533
104 308
104 412

100 533
107 15

1. DEATH BY WRONGFUL NEGLECT—*Burden of Proof.*—In an action to recover damages for death occasioned by the wrongful neglect of defendant, the burden is on the plaintiff to prove by affirmative evidence that the defendant was negligent, and that its negligence was the proximate cause of the injury complained of.

2. MASTER AND SERVANT—*Defective Machinery—Contributory Negligence—Case at Bar.*—There can be no recovery by a servant against his master for an injury caused by the failure of the servant while using defective appliances to take a precaution for his own safety, which is both obvious and well known to him. In such case the negligence of the servant is the proximate cause of the injury. In the case at bar, the intestate, an experienced lineman of an electric light company, came to his death by the passage of a current of electricity through his body occasioned by his taking hold of a wire insufficiently insulated, and, at the same time, grasping the carbon in an arc lamp, instead of separating the carbons with a dry stick, or other non-conductor, as he well knew he should have done, and hence there can be no recovery for the injury.

3. MASTER AND SERVANT—*Risks Incident to Service—Electric Wires—Defective Insulation—Lineman.*—Defective insulation of wires, which it is the duty of a line inspector of an electric company to inspect, is a risk incident to the employment, which such inspector assumes, and cannot be made the ground of an action for damages by him against the company.

4. DEMURRER TO EVIDENCE—*What Constitutes Conflict of Evidence.*—Where a plaintiff, in answer to a general question as to the duties of his intestate, specifies certain duties, but it is apparent that he did not undertake to give a comprehensive statement of all his duties, and the defendant does not deny the plaintiff's version of one contract, but affirms that there was a second contract, made at a later day, by which those duties were increased, and this latter

evidence is not contradicted by the plaintiff, though given in his hearing, it cannot be reasonably and fairly said that there is a conflict of evidence, even on a demurrer to evidence by the defendant. The testimony of the defendant is in the nature of a confession and avoidance, and the matter of avoidance is not controverted.

5. DEMURRER TO EVIDENCE—*What Evidence of Demurrant May be Considered.*—On a demurrer to evidence in this State, the demurrant does not waive all of his evidence, but is entitled to the benefit of all his unimpeached evidence not in conflict with his adversary's, and to all inferences that necessarily flow therefrom.

Error to a judgment of the Corporation Court of the city of Bristol, rendered April 8, 1901, in an action of trespass on the case wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The facts sufficiently appear in the opinion of the court.

*John W. Price* and *Baily & Byars*, for the plaintiff in error.

*J. H. Winston* and *Curtin & Haynes*, for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This action was brought in the Corporation Court for the city of Bristol to recover damages for the death of W. T. Bowers, the husband and intestate of plaintiff in error, alleged to have been occasioned by the negligence of the defendant company.

The case made by the declaration is that deceased, at the time of the accident, in September, 1900, was employed by the defendant company, a corporation owning and operating electric lights and lines in Bristol, Virginia, and Bristol, Tennessee, to trim with carbon the electric lights along its lines, and to replace and adjust carbons, and keep the lights in proper condition; that, at Anderson Park, Bristol, Tennessee, Bowers, while attempting to reach a point on a pole supporting a lamp, to adjust and ar-

range the carbon in the lamp, "came in contact with electricity leaking or escaping from the lamp, fixture, frame and appliances, and wire supplying the lamp with electricity, by reason of which he was shocked and thrown from the pole," receiving injuries which caused his death; that the defects complained of were known to the company, but were unknown to Bowers.

The company pleaded "not guilty," and, after the testimony was closed, demurred to the evidence. Thereupon the jury returned a verdict for the plaintiff, subject to the opinion of the court on the demurrer to evidence, and assessed her damages at $3,500. The court sustained the demurrer, and rendered judgment for the defendant, and the case is here upon writ of error to that judgment.

The accident occurred and Bowers died in Tennessee.

It appears that he, in company with his wife and children, was on his way to church on Sunday night, when he discovered that the arc light in question was not burning. Leaving his family at a street corner near by, he went to the park to start the light. He was soon afterward found lying on the ground at the foot of the pole in an injured condition, and stated that he had received a shock which caused him to fall. · He was carried to his home, and only survived some two hours. It is matter of conjecture as to just how the shock was occasioned. The evidence disclosed the fact that the insulation on one of the wires, carrying the current of electricity to the lamp, was worn off where it entered the left hood-pole; and the forefinger and second finger on the right hand of deceased were badly burned, and so was the second finger on the inside next to the forefinger.

In the argument much stress was laid on the fact that the pole was in a leaning position, but that circumstance was not made a ground of complaint in the declaration, nor was it proved to what extent, if any, it contributed to the accident. The burden rested upon the plaintiff to prove by affirmative evidence that the company was negligent, and that its negligence was the

proximate cause of the injury complained of. *C. & O. Rwy. Co.* v. *Sparrow,* 98 Va. 640; *N. & W. Rwy. Co.* v. *Cromer,* 99 Va. 763.

Conceding that it may have been negligent in failing to properly insulate its wire, it nevertheless plainly appears that that omission could not have been the primary cause of the accident. The evidence shows that contact with the wire at the hood-pole, where the insulation was worn off, would not, of itself, have produced shock, but in order to bring about that result, there must also have been connection with the carbon of the lamp, thereby shunting the electrical current from its true course, and causing it to make a short circuit through the body of deceased.

It is not pretended that the insulation was defective except at the one point. It must follow, therefore, that the other point of contact, necessary to form a circuit, was the carbon of the lamp.

When the carbon electrodes are in contact the current is continuous, and in order to produce light, they must be slightly separated. The theory of the arc light is that by separating the carbon electrodes some of the carbon, or the volatile constituents not expelled by previous baking, become volatilized and the interrupted electrical current passes from the one to the other in the form of a curved flame or *arc.* Intense heat is generated by the current encountering an opposing electromotive force at the arc, and energy is transformed into heat. At the same time a brilliant light is emitted by the white hot carbon electrodes.

It appears that the customary, proper, and safe way to adjust the carbons is to separate them with a dry stick, a non-conductor—a usage well known to the deceased, who had been engaged in that business for nine years.

So that the necessary inference from conceded facts is that the cause of accident was the failure of Bowers to take this obvious precaution for his own safety, coupled with the defective insulation of the wire at the hood-pole.

In that aspect of the case, it appears that the contributory negligence of deceased was *the proximate cause* of the injury; and, in such case, upon familiar and well-settled principles, there can be no recovery.

But there is another view of the case equally fatal to plaintiff's pretentions. The evidence showed that deceased, in addition to trimming lamps and doing inside wiring, was line inspector, and thereby charged with the duty of keeping the company apprised of the condition of the wires, poles, and lamps. It was through him alone that the company could have known of the defective insulation of the wire in question. It is insisted that there was a conflict of evidence on that point, and, under the rules applicable to demurrers to evidence, the doubt must be resolved in favor of the demurree. A careful consideration of the testimony shows that there was no such conflict. Mrs. Bowers, Mrs. Sullivan, and the witness Smith, in answer to a general question as to what were deceased's duties, replied that he trimmed lamps, and did inside wiring. But it is apparent that they did not undertake to give a comprehensive statement of all his duties. For, in answer to another question, Mrs. Bowers conceded that it was his duty, in addition to what had been enumerated, to perform the service in which he was engaged when the accident that caused his death befell him; and Smith admitted that he did not know what his duties were.

On the other hand, Gannon, the general manager of the company, testified that, at the time of the accident, Bowers was employed in the capacity of lineman, lamp-trimmer, and line-inspector; that he had been engaged in the two former capacities (as witnesses for the plaintiff declared), but left the service of the company, and, after an absence of about two months, in the latter part of August, or the first of September, returned and was employed by him as lamp-trimmer, lineman, and inspector; that by the former contract he was paid $20 per month for trimming lamps, and ten cents an hour for extra work and re-

pairing, while under the latter, he received a fixed salary of $40 per month. The business of a lamp-trimmer is to replace burned carbons; and this is done in the daytime, when the current is off, and when, of course, there is no danger. As line-inspector, deceased had entire charge of the line, and it was his duty to inspect the line, and, if out of order, to repair it if he could, otherwise to report the defect to the company.

The company had no way to inspect its lines and lamps, and no means of ascertaining their condition, except through its agent, and no report was made of this defect.

Ferguson testified that Bowers repeatedly told him that it was his duty to trim the lamps and inspect the line. And Wiley, who succeeded him, said that that was his business.

No attempt was made by the plaintiff to contradict the statements of the company's witnesses as to the duties of Bowers under the second contract. Under these circumstances, it would be, indeed, an unreasonable and narrow view of the subject to hold that the general statements of plaintiff's witnesses as to the duties of deceased, were in conflict with those of the company, who gave in detail the precise stipulations of the second contract. Especially is that true, in light of the evidence on both sides, that by the original contract the duties of deceased were those of lamp-trimmer and inner-lineman, and the additional duty to inspect was imposed by the second contract, when his wages were increased, in consequence, from $20 per month, and ten cents per hour for extra work, to $40 per month.

The witnesses of the company did not deny the correctness of plaintiff's version of the terms of the first contract, but affirmed that there was a second contract by which those duties were increased. The plaintiff heard their testimony, and did not contradict it. The testimony on behalf of the company was in the nature of a confession and avoidance, and the matter of avoidance was not controverted. A conflict of evidence cannot be reasonably and fairly predicated of such conditions.

In many of the States of the Union, possibly in all except Virginia and West Virginia, the demurrant *waives all his evidence.* But the rule is otherwise in this jurisdiction, and, as is well understood, the demurrant is entitled to the benefit of all his unimpeached evidence not in conflict with his adversary's, and to all inferences that necessarily flow therefrom.

The fact that deceased was line-inspector, having been established, it follows that any injury arising from defective insulation of wires, which it was his duty to inspect, was a risk, incident to the employment, which he assumed, and cannot be made the ground of an action for damages.

Still another question was raised and discussed—one of more than ordinary interest.

As remarked, the declaration averred and the evidence showed that the alleged cause of action arose in the State of Tennessee. At common law the maxim, *"actio personalis moritur cum persona,"* prevails, and it is insisted that it was incumbent upon the plaintiff to allege and prove her right to maintain this action under some statute of Tennessee; that this court will take judicial notice of the fact that the territory of which Tennessee is composed constituted a part of the original English colonies of America, and, in the absence of evidence to the contrary, will presume that the Common Law obtains there. *Nelson* v. *C. & O. Rwy. Co.,* 88 Va. 976; *Stewart* v. *Conrad, ante* p. 128.

Inasmuch, however, as the views already taken of the case are conclusive of it, a decision of that question is unnecessary.

The judgment of the trial court in sustaining the demurrer to the evidence was plainly right, and must be affirmed.

*Affirmed.*