# Wytheville.

## BROWDER v. SOUTHERN RAILWAY CO.

### June 13, 1907. ·

1. EVIDENCE—*Abandoned Pleadings—Impeachment.*—Where an amended declaration has been substituted for the original, the averments of the original, in the absence of any evidence that they were unauthorized, may be introduced on the cross-examination of the plaintiff for the purpose of impeaching him.

2. EVIDENCE—*Improper Admission—When Harmless.*—A judgment will not be set aside for the improper admission of evidence by the trial court, which could not have prejudiced the objecting party.

3. MASTER AND SERVANT—*Safe Appliances—Inspectors—Defects to be Looked for.*—The duty of the master to use ordinary care to provide reasonably safe, sound and suitable machinery and appliances for the use of his servants, applies as well to car inspectors and ·repairers as to other servants, where the machinery or appliance provided is other than the thing to be inspected or repaired. In the latter case, there can be no recovery for injuries sustained because of defects in such machinery or appliances if the servant neglects his duty of inspection, and the defect is such as is discoverable by proper inspection.

4. APPEAL AND ERROR—*Rulings on Instructions—Correct Verdict.*—It is unnecessary to consider the rulings of the trial court in giving and refusing instructions, when, under proper instructions as applied to the facts of the case, a different verdict could not have been rightly found by the jury.

Error to a judgment of the Circuit Court of Brunswick county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Buford, Palmer & Eggleston,* for the plaintiff in error.

*William Leigh Williams,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the Court.

This is an action for personal injuries suffered by the plaintiff in error whilst in the service of the Southern Railway Company, the defendant in error.

The plaintiff was working for the railway company at Lawrenceville, one of the stations on its line of road at which its trains are inspected. One of the plaintiff's duties was, according to his own testimony, to look after all cars and engines which came into that station during the night to see if he could discover any defects, and if any were found to repair such of them as he could, and where he could not repair the defect to mark the car for the "shop" and report the fact to the foreman so that it could be sent in for repairs. Although the plaintiff denies that he was the night inspector of trains at that station, his own testimony as to what his duties were, as well as that of the defendant, shows clearly that, while he performed some other services, his chief duty was that of inspecting trains coming into that station at night.

While in the discharge of those duties (between five and six o'clock on the morning of July 4, 1904, upon a freight train which had come into the station during the preceding night), the plaintiff received the injuries complained of. He testified that he looked around the train—went down one side and came back on the other—to find defects, and made such repairs as he could; that when he got back to the last car in the train (next to the caboose) he went on top of the train to look over the cars, and found that the car next to the one from which he fell needed some repairs on the roof; that he started back to get his tools, which he had left on the ground near the caboose when he went on top of the train; that when he got on the

car from which he fell he saw that it had been worked on, that nails had been freshly driven in the running board; that he went to the grab-iron, upon which he was to come down and noticed a new lag-screw there, and that everything looked secure; that when he took hold of the grab-iron and started down, the lag screw which held one end of the grab-iron and which was too short, pulled out and he was thrown back against a car on the next track, when he fell a distance of some ten feet and received the injuries for which he seeks to recover damages.

There are two assignments of error as to the action of the court in admitting certain evidence, which we will dispose of before considering the case on its merits.

The plaintiff in his examination-in-chief had testified that he did not consider himself an inspector of cars. Upon cross-examination the defendant asked him the following question: "On referring to the first declaration you filed in this cause, Mr. Browder, I find these words: 'It was the duty of the said plaintiff whenever required to do so by the said defendant, to inspect the cars of the defendant to ascertain whether any of them needed or required repairs.' When you employed your present counsel did you tell them anything about the case?" To which the witness answered, "Oh, yes, I told them about the case." The action of the court in permitting this evidence to go to the jury is assigned as error.

The objection made to its introduction was that the statements in the original declaration were those of counsel, not of the witness; that the amended declaration, upon which the case was being tried, set forth the plaintiff's case and was written in his presence after his counsel and himself had gone over the case; that the plaintiff had never read the original declaration, which had been withdrawn when the amended declaration was filed.

While there seems to be much conflict in the authorities upon the subject of the admissibility in evidence of abandoned or superseded pleadings as extra-judicial admissions, it seems to

be settled, even in those jurisdictions where the averments in the original pleading are not permissible to disprove the allegations of the amended pleading, that the averments in the original may be introduced in cross-examination to impeach the plaintiff—at least in the absence of evidence that the pleading was unauthorized. See 1 Elliott on Ev., sec. 236; 16 Cyc. 971-973; 2 Wigmore on Ev., sec. 1067.

The pleading in question was filed by the plaintiff's authority and upon information to some extent furnished by him. It was therefore admissible upon cross-examination for the purpose for which is was introduced.

One of the defendant's witnesses had testified that the car from which the plaintiff fell was turned out of the shops of the Alabama Car Works, May 12, 1887, and that he had, as an employee of the defendant, kept a record of those cars. He was then asked the following question: "Taking that lot of 300 cars that were built about the same time by the Alabama people for the East Tennessee" (from which the defendant purchased them), "what do your records show as to the durability, or goodness or badness of those cars?"; which he answered as follows: "I find that of the 300 cars built over 17 years ago, 240 are still in service; that is, 60 have been destroyed or in accident."

If it be conceded that such evidence "was not legal and competent" to show that the Alabama Car Works were competent manufacturers, its admission could not have prejudiced the plaintiff and furnishes no ground for reversing the judgment.

The plaintiff insists that it was the duty of the defendant to see that the grab-iron on the car from which he fell was in a reasonably safe condition for use in climbing on and off the the car, which was necessary in the performance of his duties in connection with the train. The defendant, on the other hand, contends that it was the plaintiff's duty to inspect the grab-iron and see that it was in a reasonably safe condition before using it.

. The general rule is that it is the duty of the master to use ordinary care to provide reasonably safe, sound and suitable machinery and appliances for the use of his employees in the performance of their duties; and this rule is as applicable to car inspectors and repairers as to other employees, where the machinery or appliance provided is other than the thing to be inspected and repaired. But is it the rule where the employee, by the terms of his employment, is charged with the duty of inspecting and repairing the machinery and appliances which he is using or working upon?

The inspection of the grab-irons on the cars was as much a part of the plaintiff's duty as was the inspection of any other part of the train. The safety of the employees on the train was dependent upon their being in good condition. They were parts of the safety appliances of the train, and only a few days before the plaintiff's injury his attention had been specially called by his superiors to the fact that under the regulations of the Interstate Commerce Commission and the rules and orders of the defendant company it was the duty of car inspectors to see that safety appliances of all cars were carefully inspected.

In one of the more recent works discussing this question it is said, that "where by the terms of the employment the servant is charged with the duty of inspecting the machinery and appliances which he is using, or with the duty of both inspecting and repairing them, he cannot recover for injuries sustained because of defects in such machinery or appliances if he neglects his duty in that regard, and if the defects are such as are discoverable by proper inspection." 20 Am. & Eng. Enc. L. (2nd ed.) 142.

This statement of the law seems to be fully sustained by the cases.

In the case of *R. & D. R. Co.* v. *Dudley,* 90 Va. 304, 18 S. E. 274, it was held that a conductor who by the rules of the company was required to inspect all cars picked up in transit could not recover for injuries received by him by reason of his failure to inspect such cars.

In the case of *Bowers* v. *Bristol &c. Co.,* 100 Va. 533, 42 S. E. 296, it was held that defective insulation of wires, which it was the duty of a line inspector of an electric company to inspect, was a risk incident to the employment, and could not be made the ground of an action for damages by him against the company.

In the case of *A. & D. Ry. Co.* v. *West,* 100 Va. 13, 42 S. E. 914, it was decided that while it is the duty of a railroad company to use ordinary care to provide a reasonably safe place for its employees in which to perform their duties, it cannot be said that there was a lack of such ordinary care in a case where a depot agent, whose duty it was to keep himself advised and to report to the company as to the condition of the depot platform and grounds of the company, was injured by a defect in the platform which had been in daily use by himself and the public for several years, when there was nothing in its appearance to excite a suspicion of danger and the defect was so obscure that it would not have been disclosed on the most careful inspection.

It is insisted by the plaintiff that, even if it were his duty to inspect the grab-iron before using it, he made all the inspection that was necessary under the facts of the case. The evidence shows that the usual method of inspecting grab-irons is to strike them with a hammer or pull on them with the hands to see if they are securely fastened. He applied neither of these tests, nor did he apply any other test, but relied solely upon the fact that the car seemed to have been worked upon recently, that there was a new lag bolt in one end of the grab-iron, and that it seemed to be all right. These were circumstances which might be taken into consideration in inspecting the car and its safety appliances, but they did not do away with the necessity of applying a test to see that they were safe.

Under the plaintiff's own evidence he was not entitled to recover. It, therefore, becomes unnecessary to consider the assignments of error to the action of the court in giving and

refusing instructions, for if it were conceded that the action of the court in giving or in refusing instructions was erroneous it would be harmless error, since under the facts of the case, upon correct instructions, a different verdict could not have been rightly found by the jury. *Wright* v. *Independence Bank,* 96 Va. 728, 732, 32 S. E. 459, 70 Am. St. Rep. 889, and cases cited.

We are of opinion that the judgment complained of should be affirmed.

*Affirmed.*