# Richmond

## BASIL FAREN ASBURY v. COMMONWEALTH OF VIRGINIA.

June 15, 1970.

Record No. 7193.

Present, All the Justices.

*Carl C. Gillespie (Gillespie & Chambers; Gillespie, Gillespie & Hart*, on brief), for plaintiff in error.

*Edward J. White, Assistant Attorney General (Robert Y. Button, Attorney General; Reno S. Harp, III, Assistant Attorney General*, on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

This is an appeal from a sentence pronounced in the trial court upon a jury verdict finding the defendant guilty of the second degree murder of Robert E. Lee and fixing his punishment at a term of twenty years in the state penitentiary.

Robert E. Lee and Carrie Dell Wells died as a result of gunshot wounds received in the early morning hours of July 24, 1967. Lee died while enroute by ambulance from the scene of the occurrence at West Raven to a hospital in Richlands. Miss Wells, who survived for some time, later died of her wounds.

A warrant was issued on July 24, 1967, charging the defendant with the murder of Lee. Defendant was arrested on this warrant on the day it was issued. Two indictments were returned by the Tazewell County grand jury in November, 1967, against the defendant, one charging the murder of Lee (Lee indictment) and the other charging the murder of Miss Wells (Wells indictment).

Trial on the Wells indictment took place in February, 1968, and resulted in a jury verdict finding the defendant guilty of murder in the second degree and fixing his punishment at a term of twenty years in the state penitentiary. Motions to set aside this verdict were made by the defendant and the trial court deferred ruling on those motions until after trial on the Lee indictment.

Defendant employed Carl C. Gillespie and John W. Gillespie to represent him shortly after his arrest in July, 1967, and they have continued to represent him up to this time.

The first assignment of error raised by the defendant deals with the action of the trial court in denying a motion for continuance prior to trial on the Lee indictment.

In early August this case was set for a jury trial on September 4, 1968. On August 29, 1968, defendant's employed attorneys appeared before the trial court and made a motion for a continuance to the November, 1968, term of court "for the reason that the defendant

desired to have additional counsel to represent him." This motion was denied by the trial court.

While the record would indicate that other counsel were consulted by the defendant and members of his family following his conviction under the Wells indictment, it does not appear from the record that the defendant, at any time, expressed dissatisfaction with the services rendered by his employed counsel who have continued to represent him until now. No question of termination of employment of his original counsel and the substitution of new counsel is involved. All evidence and communications in the record in support of the motion deal with efforts to obtain the services of another attorney to "investigate" or as additional counsel to be associated at trial with the attorneys who were already employed by and representing the defendant.

Defendant, in his petition and at oral argument, concedes that the motion for a continuance was within the sound discretion of the trial court. Here, where the defendant has been ably represented throughout these proceedings by counsel of his own choice, we find nothing in the record to indicate an abuse of this discretion. We, therefore, hold this assignment to be without merit.

■ Defendant's next contention is that the trial court erred in failing to sustain a motion for a mistrial made by the defendant.

Mae Wells, mother of Carrie Dell Wells, was called as a witness for the Commonwealth. Her testimony was that she had retired between 10:00 and 11:00 p.m. on the night of July 23; that she was awakened in the early morning hours of July 24, between 1:30 and 2:30 a.m., by her daughter's screaming; that these screams were followed by gunshots which appeared to come from the yard or road in front of her home; that she immediately went to the front yard and then to the road; that there was no one else present at the scene at that time except the two victims and herself; that her daughter and Lee were lying on the edge of the road near the corner of her yard; that she looked at Lee as she passed him but that she went immediately to her daughter. She went on to say, "I saw this blood on Carrie's arm and she was holding herself like this, and I took hold of her arm and there was blood on her and when I bowed down to talk to her, she said, Basil did it."

On cross-examination it was brought out that Mae Wells had not disclosed this *res gestae* statement made by her daughter to the Commonwealth's Attorney or the police until November, 1967, more than three months after the occurrence. She was questioned ex-

tensively about her contacts with the police and the Commonwealth's Attorney at the hospital on the morning of the occurrence and about her numerous contacts with them from that time until this information was disclosed to the Commonwealth's Attorney in November.

The following question was then asked by defense counsel:

"Q. Let me ask you this, Mrs. Wells. During all the time and the different times that Mr. Coats (the Commonwealth's Attorney) talked with you, either in the hospital or the various occasions that he came to your house to investigate this, did you ever at any time tell him that when you went down there that morning and leaned over Carrie that she made the statement, Basil did it?"

The witness' response was as follows:

"A. Well, sir that one particular question was never asked me, Carrie was telling him he done it in her lifetime."

Defendant immediately objected to the answer and moved to strike it. The court promptly sustained the objection and directed the jury to disregard the answer. This occurred about midafternoon of the first day of the trial. Following this occurrence some ten additional witnesses for the Commonwealth testified before the trial was recessed until the following morning.

The following morning a motion for a mistrial was made on the grounds that the testimony was "highly prejudicial and improper" and that the court could not "eliminate the error by merely instructing the jury to disregard that statement." This motion was overruled and exception was duly taken.

The rule in Virginia is well established that a judgment will not be reversed for the admission of evidence which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence has been prejudicial to the adverse party. The exception to this rule is that the admission of incompetent evidence is reversible error notwithstanding the fact that the trial court, after its admission, instructed the jury to disregard it, if such illegal evidence was so impressive that it probably remained on the minds of the jury and influenced their verdict. *Washington & O. D. Ry. v. Ward's, Adm'r.*, 119 Va. 334, 89 S.E. 140 (1916); *Coffey v. Commonwealth*, 188 Va. 629, 51 S.E.2d 215 (1949).

While the answer given by the witness here was not directly responsive to the question, a review of the searching cross-examination to which the witness had been subjected shows it was not totally unresponsive. The trial court, upon the defendant's objection, took prompt action to strike the answer and to direct the jury to disregard it. We find no error as we find no manifest probability of prejudice to the defendant nor do we find the evidence so impressive as to come within the exception to the rule set forth above. *Lewis v. Commonwealth*, 211 Va. 80, 175 S.E.2d 236 (1970), this day decided.

▆ The next assignment of error is directed to the failure of the trial court, at the beginning of the second day of trial, to examine the members of the jury to ascertain whether they had read a newspaper article which appeared in the local weekly newspaper on the afternoon of the first day of the trial.

This newspaper article was more than half a column in length. The first two paragraphs read as follows:

> "Criminal court opened in Tazewell Wednesday, with the Basil Asbury murder case first on the docket. Three murder cases will also be tried during this term of court.
> "Asbury, charged with shooting Bob Lee, was previously tried for killing Carrie Wells of Richlands. He was convicted of this charge, and sentenced (to) 20 years."

The article then goes on to relate that the defendant had received treatment at Southwestern Hospital in Marion and in a Richlands hospital since the prior trial. It refers to Asbury as a Richlands businessman, well known in the area. The article recites the names of counsel and then goes on to deal with other pending criminal cases and the dates that these cases were scheduled for trial.

The jury had not been sequestered but had been released overnight by the court with an admonition "not to discuss the case with anyone, nor allow anyone to discuss it with you or in your presence."

The record shows that, during the *voir dire* examination of the jurors, defense counsel made frequent references to defendant's trial for the murder of Wells. The clear inference from the questions asked by defense counsel was that the defendant had been convicted at the earlier trial.

Some of the members of the venire were excused because they had formed fixed opinions as to the guilt or innocence of the defend-

ant as the result of accounts appearing in the news media at the time of the offense or at the time of the trial under the Wells indictment.

Several members of the jury, who were selected to try the case, indicated on *voir dire* examination that they had read or seen accounts of the offense or of the first trial but each of these jurors indicated that he had formed no fixed opinion as to the guilt or innocence of the defendant which would repel the presumption of his innocence. Also, each juror who was selected to try the case swore under oath that he would render a fair and impartial verdict according to the law and the evidence.

Thus, it could not fairly be said that any juror was unaware of the defendant's prior conviction at the time the oath to try the case was administered to the jury.

The motion to examine the jury was addressed, as are many of the incidents of trial, to the sound discretion of the trial judge. We find no abuse of that discretion.

■ When the defendant was cross-examined the court permitted the Commonwealth's Attorney to contradict his prior testimony by use of a bill of complaint filed in 1965 in a suit in which the defendant was seeking a divorce from his wife. Defendant assigns this as error.

One of the allegations in the bill of complaint was that the defendant's wife had falsely and repeatedly accused him of having affairs with other women. The bill was signed by the attorney who represented the defendant in the divorce action but was not signed or sworn to by the defendant himself. The defendant testified that he had employed the attorney and had given him information regarding his marital problems which was used by the attorney in preparing the bill of complaint. Defendant denied that he had ever read the pleading. The evidence fully disclosed the circumstance surrounding the employment of counsel and of the circumstances surrounding the preparation and filing of the divorce bill.

In his earlier testimony the defendant had admitted that Carrie Dell Wells had been his mistress for three and a half or four years prior to July 1, 1967.

The Commonwealth's evidence was largely circumstantial. The defendant had voluntarily taken the witness stand and testified in *his* own behalf. He denied that he had fired the fatal shots. His credibility was a question for consideration and determination by the jury.

The pleading was filed by the defendant's authority and upon information furnished by him. It was admissible upon cross-examination for the purpose of impeaching him. *Browder* v. *Southern Ry. Co.*, 107 Va. 10, 57 S.E. 572 (1907).

Defendant's other assignments of error deal with the refusal of the court to grant certain instructions tendered by the defendant. In each instance the refused instruction was either offered in amended form and granted or the principles of law contained therein had been previously and fully covered by other instructions granted by the court.

The court's refusal to grant instructions covering principles of law upon which the jury has already been properly instructed is not error. *Norfolk and W. Ry. Co.* v. *Birchfield*, 105 Va. 809, 54 S.E. 879 (1906); *Crowell* v. *Duncan*, 145 Va. 489, 134 S.E. 576, 50 A.L.R. 1425 (1926); *Adams* v. *Plaza Theatre, Inc.*, 186 Va. 403, 43 S.E.2d 47 (1947); *Evans* v. *City of Richmond*, 210 Va. 403, 171 S.E.2d 247 (1969).

For these reasons the judgment of the court below is affirmed.

*Affirmed.*