## CIRCUIT COURT OF FREDERICK COUNTY

Commonwealth of Virginia

v.

Tucker

### July 30, 1986

### Case No. (Criminal) 5024

By JUDGE HENRY H. WHITING

The final ground for the motion for a new trial turns upon the failure of the Court to instruct the jury [on] defense counsel's actions in interviewing a witness and (1) discussing with her a collateral case which might discredit the complaining witness's account to her of the incident in question and (2) allegedly giving the complaining witness an erroneous description of the vehicle which the complaining witness had described to this factual witness. The whole matter arose as a result of the Commonwealth's Attorney's question on page 82 of the transcript and the response following:

Q. Has anybody threatened you about your testimony, tried to tell you what to say, or not to say, in this case?

A. No one has threatened me, but I did have a call from the defense attorney last evening, asking me if I would tell him what had happened. And I said I would tell him in Court today what I had to say.
And then he told me that I didn't have to speak with him, and that his client really couldn't have been at that particular place in Winchester because he was just released

on bail in Clarke County. And, then, he told me that Bowen had lied at another trial for the same problem, and that was why his client was released, was because Bowen had lied. So, therefore, he wasn't credible.

\* \* \* \* \*

THE WITNESS: And he also told me. . . he deliberately mentioned the Blazer. Now, that was the vehicle that they picked Bowen up in, the stepfather and the D. C. policeman, is all I know, because that is what Bowen called him--the D. C. policeman was his father's friend.

And they were in this Blazer, and they were going to come after him. And that's. . . you know. . . watch out for that Blazer. And he told me it was orange.

BY MR. AMBROGI:

Q. Who told you that?

A. Bowen told me it was orange. And the defense counsel deliberately mentioned a yellow and black Blazer. So, I don't know what his reasons were. Is it ethical for him to do that?

THE COURT: Well, I can't answer that, at this point.

BY MR. AMBROGI:

Q. So, Bowen did describe the Blazer to you?

A. It was an orange Blazer.

Following that, there were almost thirty pages of testimony and colloquy before the Court ruled that all the testimony was inadmissible and instructed the jury to disregard that testimony in the following language:

THE COURT: Members of the jury, let me explain this to you. I have decided that all of the evidence having to do with the telephone conver-

sation between Mr. Fowler and Mrs. Haines, really is not relevant in any way, in this case, and should not be considered by you at all in deciding the issues in this case. It has to do with another issue, and it has nothing to do with this case. And I don't want you to draw any negative inference against the Commonwealth or the defendant, because I have stricken the evidence. It simply has nothing to do with it.

And, so, whatever Mr. Fowler said to this lady and whatever she said back just doesn't have anything to do with the case. And this lady is on the stand to relate what she saw and did out there when she picked the child up and what he said to her, if anything. And you judge her testimony on that and nothing else.

The defendant contends that he is still entitled to a mistrial because the Court failed to instruct the jury that his conduct was ethical, and because of that the jury drew negative inferences of him and therefore about his client as well, which the Court did not and could not cure by the above-mentioned instruction. The Court does not believe that the position is well founded for the following reasons.

(1) When the Court told the jury to disregard all of the evidence relating to the interview between Mr. Fowler and Mrs. Haines it was in the most explicit and broadest terms and the jury could not have drawn any negative inferences about either Mr. Fowler or the defendant if they had followed the Court's admonition. The Court has no reason to believe the jury did not follow its admonition.

(2) The entire matter was collateral to the issue of guilt, and if any negative inferences were to be drawn therefrom it would only reflect upon Mr. Fowler and not upon the defendant, who was not shown to have had anything to do with what Mr. Fowler did in his interview with the witness.

(3) Even if the jury might have felt the defendant was behind the conversation in some way, the admonition to disregard the testimony was sufficient to cure the matter.

Virginia has faced this issue in a number of criminal cases and the general rule is, "an error arising from admission of evidence. . . may usually be cured by prompt and decisive action of the trial court." *Lewis* v. *Commonwealth*, 211 Va. 80, 82 (1970). Quoting an earlier Virginia case and other Virginia authority, the Court points out:

> "A judgment ought not to be reversed for the admission of evidence. . . which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party. A different rule would result in fixing an intolerable handicap upon the *nisi prius* courts." . . . Whether the conduct was prejudicial is basically a question of fact to be determined in the light of all the circumstances of each particular case.

A review of the Virginia cases on this subject indicates that it is only in the most egregious circumstances that a clear and unequivocal admonition to disregard inadmissible evidence does not suffice. A quick glance at *Ford* v. *Commonwealth*, 205 Va. 564 (1964), asking an accomplice whether he had not been recently convicted of murder and sentenced to forty-eight years in the penitentiary, which was not stricken at the time, coupled with a closing argument to the jury that it should not let the accomplice bear the whole burden, was held not cured by the Court's instructing the jury to disregard the evidence and the argument in the closing argument because the instruction came too late to cure the prejudice. However, in *Montgomery* v. *Commonwealth*, 214 Va. 343 (1973), the Court could not cure the prejudice resulting from the admission of testimony in a murder trial from a witness that the defendant had killed another man while he was in prison, coupled with several other bits of testimony indicating that he had been in a penitentiary and that he had planned other violent acts unrelated to the act for which he was being tried. The Court found that: "The 'illegal evidence was so impressive that it probably remained on the minds of the jury and influenced their verdict,' *Asbury* v. *Commonwealth*, 211 Va. 101, 124 (1970)." *Id.* at 345. In *Asbury* a prompt admonition by the Court to exclude a declaration by a victim to a witness

that the accused had shot her was sufficient and did not require a mistrial. Similarly, in *Lewis* v. *Commonwealth*, 211 Va. 80 (1970), when several improper questions about an accomplice pleading guilty were promptly stricken and the jury told to disregard them, this was held sufficient and not to require a new trial. *Asbury* is certainly much closer to the ultimate issue of guilt and innocence than Mr. Fowler's alleged impropriety in the conversation and, indeed, so were the negative inferences to be drawn from the conviction of an accomplice in the *Lewis* case.

My review of the Virginia cases and the transcript in this case, coupled with my recollection of the events which occurred at trial, convince me that the instruction to the jury to disregard the inadmissible evidence fully and effectively neutralized that evidence. I do not believe that evidence influenced the verdict in any way.

For the foregoing reasons, the motion to set aside the verdict and to grant a new trial is denied and the defendant's objections duly noted.