COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Coleman and Senior Judge Cole
Argued at Richmond, Virginia


RICHARD FRANKLIN PALMER

MEMORANDUM OPINION[*] BY
v.         Record No. 2507-95-2      JUDGE SAM W. COLEMAN III
AUGUST 5, 1997

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
William R. Shelton, Judge

Michael Morchower (Christopher C. Booberg;
Morchower, Luxton and Whaley, on brief), for
appellant.

Richard B. Smith, Assistant Attorney General
(James S. Gilmore, III, Attorney General, on
brief), for appellee.


The defendant, Richard Franklin Palmer, was convicted by a jury of first degree murder and use of a firearm in the commission of a felony.  He was sentenced to life imprisonment and five years, respectively, as recommended by the jury.  On appeal, the defendant contends that the trial court erred by: (1) failing to strike two veniremen for cause; (2) refusing to grant a mistrial after the Commonwealth introduced evidence which it stipulated would not be introduced; (3) refusing to grant a mistrial after the prosecutor elicited evidence in rebuttal that the parties had stipulated would be excluded; (4) refusing to ask the jury on the second morning of trial whether they had read a newspaper article about the trial; (5) allowing the prosecutor to

         [*] Pursuant to Code § 17-116.010, this opinion is not designated for publication.

present rebuttal argument at the sentencing phase after defense counsel had waived closing argument; and (6) allowing the prosecutor to read the name of the victim from the indictment when introducing evidence at sentencing of a prior conviction.

We hold that the trial court did not err by refusing to strike the two veniremen for cause or by refusing to grant a mistrial. We also hold that the trial judge did not abuse his discretion by allowing the Commonwealth's attorney to present "rebuttal" argument when neither the Commonwealth's attorney nor defense counsel had argued or by refusing to poll the jury about whether they had read a newspaper article. Accordingly, we affirm the defendant's convictions.

## I. CHALLENGES TO VENIREMEN

During voir dire, defense counsel asked whether the venirepersons had family or friends who were police officers. Venireman Richard Brown answered that his father-in-law was a Chesterfield County detective and his uncle was a sheriff in Lancaster County. When asked if he could give the defendant a fair trial in light of these relationships, Mr. Brown replied that he might be "slightly biased" in favor of the Commonwealth. When the trial judge asked Brown if his father-in-law had talked to him about the case or if he knew anything else about the case, Brown replied, "no." The judge then asked Brown if he could "listen to the evidence, be fair both to the Commonwealth and the defendant without being influenced by the directions of

- 2 -

your father-in-law or other relatives?"  Mr. Brown replied, "I feel I can, but I want to make you aware of my situation also."

Defense counsel then asked if any of the venirepersons had friends or relatives working in any other area of law enforcement.  Sheila Matthews replied that she was a parole officer for the Richmond juvenile court, but stated that her job would not interfere with her ability to give the defendant a fair trial.

At the end of voir dire, defense counsel moved to strike Brown and Matthews for cause.  The trial court denied both motions.

"Absent the existence of a per se ground for exclusion, rulings concerning the qualifications of a juror are left to the sound discretion of the trial court and will not be overturned absent a showing of manifest error."  Williams v. Commonwealth, 21 Va. App. 616, 618, 466 S.E.2d 754, 756 (1996) (en banc).  "A prospective juror is not subject to automatic exclusion because of an association with law enforcement personnel, provided that the juror has no knowledge of the facts of the case and demonstrates impartiality to the parties."  Clozza v. Commonwealth, 228 Va. 124, 129, 321 S.E.2d 273, 276 (1984), cert. denied, 469 U.S. 1230 (1985).  Prospective jurors must have a willingness to "`lay aside . . . impression or opinion and render a verdict based on the evidence presented in court.'"  Calhoun v.

Commonwealth, 226 Va. 256, 258, 307 S.E.2d 896, 897 (1983) (citation omitted). Such evidence of impartiality "must emanate from the juror . . . unsuggested by leading questions." Educational Books, Inc. v. Commonwealth, 3 Va. App. 384, 389, 349 S.E.2d 903, 907 (1986).

Here, the trial judge did not abuse his discretion by refusing to strike jurors Brown and Matthews for cause. Brown stated that he had no preconceived ideas about the case and that he could be a fair and impartial juror. Matthews testified that her job in law enforcement would not affect her ability to give the defendant a fair trial. A parole officer is not per se unfit to serve as a juror. Therefore, the trial court did not err in finding that Brown and Matthews were impartial and in seating them on the jury panel.

## II.  MISTRIAL MOTIONS

On the night the defendant shot and killed the victim, who was his mother-in-law, he also shot his wife. On the morning of trial, the defendant pled guilty to malicious wounding of his wife. Prior to trial, the parties stipulated that no evidence would be presented regarding the shooting of the defendant's wife because the defendant had pled guilty to those charges and because the defendant and his wife were still married. The stipulation was not recorded and not made part of the record.

At trial, the Commonwealth called as a witness the defendant's neighbor. The neighbor testified that on the night

of the charged offense she heard screaming and saw the defendant walk out his back door with a shotgun. When her doorbell rang, the neighbor went to her front door.

The following exchange took place between the neighbor and the prosecutor.

> PROSECUTOR: When you got to the front door, Miss Palmer [defendant's wife] was there, Shelly Palmer?
>
> WITNESS: It was Shelly there.
>
> PROSECUTOR: After you talked to her, what did you do at that point?
>
> WITNESS: I didn't really talk to her. She said, "Call 911. I've been shot."

Defense counsel objected and requested a mistrial on the ground that the parties had stipulated that no evidence would be presented regarding the shooting of the defendant's wife. The Commonwealth's attorney acknowledged that he had agreed to the stipulation and that he had instructed the witness to not mention the shooting of the defendant's wife. However, the witness surprised the prosecutor with her statement concerning the shooting of the defendant's wife. The trial judge overruled the motion for mistrial and instructed the jury to disregard the witness' statement about the wife's comments.

Defense counsel's second mistrial motion was made during the Commonwealth's rebuttal. This motion was also based upon the stipulation that the Commonwealth would not present evidence concerning the shooting of the defendant's wife. Describing how

he shot the victim, the defendant earlier had testified that, as the victim moved toward him, he backed up, tripping on a bag of dog food and the gun went off.  On cross-examination, the prosecutor asked the defendant what happened after he shot the victim.  The defendant said that he left the house.  Upon further questioning, the defendant admitted that he fired a second shot.  Defense counsel did not object to the question or testimony.

In rebuttal, the prosecutor called the investigating detective and asked him whether a second shot had been fired and to describe where the second shotgun casing was found.  The prosecutor also introduced into evidence photographs showing where both casings were found.  Defense counsel objected and made a motion for a mistrial.  The judge held the prosecutor's questions to be proper rebuttal in response to the defendant's testimony and overruled the defendant's mistrial motion.

Whether to grant a mistrial is a matter resting within the sound discretion of the trial court.  Cheng v. Commonwealth, 240 Va. 26, 40, 393 S.E.2d 599, 607 (1990).  "When a motion for mistrial is made, based upon an allegedly prejudicial event, the trial court must make an initial factual determination, in the light of all the circumstances of the case, whether the defendant's rights are so 'indelibly prejudiced' as to necessitate a new trial."  Spencer v. Commonwealth, 240 Va. 78, 95, 393 S.E.2d 609, 619, cert. denied, 498 U.S. 908 (1990) (citation omitted).

As to the neighbor's testimony, the trial court did not err by refusing to grant a mistrial. The scope of the stipulation is unclear and was not in writing. Moreover, the witness' testimony was admissible evidence. See Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 380-81 (1988) (holding that evidence of other crimes is admissible if it "is connected with or leads up to the offense for which the accused is on trial . . . ."), cert. denied, 490 U.S. 1009 (1989); Code § 19.2-271.2 (prohibiting a spouse from testifying against the other without consent but not excluding evidence of a crime committed against a spouse). Although the Commonwealth agreed not to present evidence about the defendant shooting his wife, the trial judge was not bound by the parties' informal stipulation to exclude admissible evidence and did not abuse his discretion by refusing to grant a mistrial. Cf. Odum v. Commonwealth, 225 Va. 123, 132, 301 S.E.2d 145, 150 (1983) (holding that trial court did not err by refusing to admit polygraph evidence even though the prosecutor and the accused stipulated to its admissibility); Hunter v. Commonwealth, 15 Va. App. 717, 724-26, 427 S.E.2d 197, 202-03 (1993) (holding that trial court did not err by admitting evidence of the nature of the felony in a willful failure to appear prosecution where the parties had stipulated that the accused was charged with a felony).

As to the defendant's second mistrial motion, the Commonwealth attorney's questions elicited proper rebuttal

testimony; therefore, the trial court did not err by refusing to grant a mistrial.  The defendant testified on direct examination that he left the house after he unintentionally fired one shot.  On cross-examination, he acknowledged that he reloaded and fired a second shot.  The Commonwealth was entitled to prove, in rebuttal, that the defendant testified falsely about leaving the house and about firing a second shot, which would tend to prove that the shooting was intentional and not accidental.

### III.  POLLING THE JURY

After the jury found the defendant guilty, the sentencing phase of the trial was continued until the next day.  The trial court did not admonish the jurors to avoid newspaper or media accounts of the trial.  An article about the trial appeared in the Richmond Times Dispatch the morning of the sentencing hearing.  The article contained information that was not introduced at trial concerning the defendant having shot his wife and his guilty plea on that charge.  When the sentencing hearing convened, defense counsel asked the trial judge to poll the jurors to determine whether they had read the newspaper article.

The judge refused to poll the jurors to determine whether they had read the newspaper article; however, he did ask the jurors whether anyone had violated his admonition to not discuss the case.  As previously noted, the evidence that the defendant had also shot his wife was admissible and the jury was aware of that fact prior to publication of the newspaper article.

> [J]urors serving in a criminal case may not,

> during the trial, properly read newspaper
> stories or listen to media reports discussing
> the proceedings.  The basis for this
> elementary proposition is that a juror's
> information about the case should come only
> from the evidence presented at trial and not
> from any extraneous source.

Thompson v. Commonwealth, 219 Va. 498, 500, 247 S.E.2d 707, 708 (1978).  Whether to question jurors about possible exposure to news articles during trial rests within the sound discretion of the trial court.  Keil v. Commonwealth, 222 Va. 99, 107, 278 S.E.2d 826, 831 (1981).  "Where there is no substantial reason to fear prejudice, a trial court is not required to question jurors concerning their possible exposure to information outside the courtroom."  Waye v. Commonwealth, 219 Va. 683, 701, 251 S.E.2d 202, 213, cert. denied, 442 U.S. 924 (1979).

Our decision on this issue is controlled by the Supreme Court's holding in Asbury v. Commonwealth, 211 Va. 101, 175 S.E.2d 239 (1970).  In Asbury, the Supreme Court held that the trial court did not abuse its discretion in refusing to poll the jury about a newspaper article after having admonished the jury "not to discuss the case with anyone, nor allow anyone to discuss it with you or in your presence."  As in Asbury, the jurors here were already aware of the information in the newspaper article, which was admissible evidence, that the defendant also shot his wife during the incident.  Moreover, that information and the fact that he had pled guilty to shooting his wife would have been admissible evidence during the sentencing hearing.  Thus, the

trial court, after reviewing the newspaper article, did not abuse its discretion in refusing to poll the jurors as to whether they had read the article.

## IV.   COMMONWEALTH'S REBUTTAL ARGUMENT

At the close of the sentencing phase of the defendant's bifurcated trial, the prosecutor waived closing argument but asked to reserve rebuttal argument.  Defense counsel also waived closing.  The prosecutor then requested an opportunity to argue but defense counsel objected, contending that because the defense waived closing, there was nothing for the Commonwealth to rebut.  The trial judge overruled the objection and allowed the Commonwealth to make a closing argument to the jury.  Defense counsel did not thereafter request the opportunity to argue to the jury.

> A trial court has broad discretion in the supervision of opening and closing arguments and will be reversed only upon a finding of abuse of discretion.  O'Dell v. Commonwealth, 234 Va. 672, 703, 364 S.E.2d 491, 509, cert. denied, 488 U.S. 871 (1988).  "In the normal course of a summation to the jury, of necessity, only one side may open.  The other party then has the opportunity to reply to his opponents [sic] opening argument, and in turn make his own argument to the jury.  The

> one who spoke first then has the opportunity
> to answer the argument of his opponent. No
> new material should be injected into this
> final statement. . . ."

Griffin v. Commonwealth, 22 Va. App. 622, 624, 472 S.E.2d 285, 287 (1996) (quoting People v. Caballero, 464 N.E.2d 223, 235 (Ill.), cert. denied, 469 U.S. 963 (1984)).

The trial judge exercised his discretion by allowing the Commonwealth to make a closing argument to the jury. Here, the Commonwealth was not being allowed to make "rebuttal" argument after the defendant had waived closing argument; the defendant had made no argument to rebut. Although the Commonwealth's attorney attempted to reserve his entire argument for rebuttal and defense counsel attempted to preempt all argument by waiving oral argument, the trial judge did not err by allowing the Commonwealth in proper order to present its closing argument to the jury. See People v. Bandhauer, 426 P.2d 900 (Cal. 1967) ("[T]here is no reasonable probability that the sequence of closing argument alone would affect the result . . . ."). Defense counsel made no further effort to make a closing argument; therefore, no prejudice to the defendant has been demonstrated.

## V.   INDICTMENT

The defendant contends that the trial court erred by allowing the prosecutor during sentencing to read the charges

- 11 -

from the indictments regarding the charges pertaining to the defendant's shooting of his wife. The three indictments that were read to the jury contained the defendant's wife's name. The defendant objected based upon the stipulation that the Commonwealth would not introduce evidence that the defendant had shot his wife. The defendant also argued that Code § 19.2-295.1, which permits evidence of prior convictions, does not allow indictments to be read to a jury. The trial judge overruled the defendant's objection and allowed the prosecutor to read the indictments to the jury.

The term "record of conviction" in Code § 19.2-295.1 includes the indictment for any prior conviction as well as the final order and sentencing records because these documents are all "recorded evidence that the court convicted appellant for the crimes charged." Folson v. Commonwealth, 23 Va. App. 521, 525, 478 S.E.2d 316, 318 (1996). Facts contained in the record of conviction other than the mere fact of conviction are admissible during the sentencing phase under Code § 19.2-295.1. See Gilliam v. Commonwealth, 21 Va. App. 519, 465 S.E.2d 592 (1996) (holding that punishment as well as fact of conviction is admissible). Thus, reading the defendant's wife's name from the indictments was permissible and the trial court did not err by allowing the indictments to be read to the jury. Furthermore, as we have noted, the parties' stipulation did not preclude the trial court from admitting relevant, material, and otherwise admissible

evidence.

Accordingly, we affirm the defendant's convictions.

<u>Affirmed</u>.